ELIZABETH M. M. WHITE, Ex'trix, &c., Appellant, *v.* ANDREW J. McNETT and ABBY McNETT, his wife, Respondents.

Where the wife conveys away a part of her real estate owned in her own right, and takes back in part payment of the consideration thereof bonds and mortgages of her grantee, which she afterwards sells and assigns by deed with a covenant of guaranty by herself and husband, that the money payable thereby is collectible; in an action on such covenant of guaranty against the husband and wife for breach of such covenant, *Held,*

That to enable the plaintiff to maintain this action and charge the unpaid balance upon the separate estate of the wife, he is bound to show, either that there was an intention to charge such separate estate in the contract of sale and guaranty by the wife, or that the consideration obtained upon the sale, etc., was for the direct benefit of her separate estate.

THE facts in this case will sufficiently appear in the opinion of BROWN, J., who delivered the prevailing opinion.

*L. K. Haddock,* for the appellant.

I. The justice before whom this action was tried, erred in refusing to find that Mrs. McNett had separate property derived from a person other than her husband; that Andrew J. McNett was the agent of Mrs. McNett, and as such sold the mortgages to J. W. White, and as such agent received the check of L. K. Haddock therefor, and obtained the money thereon, and paid out the same for the benefit of the estate of the said Abby J. McNett; that the said Abby, at the time of such assignment, held one of the Belden mortgages and the May mortgage, which was exchanged for property in Belmont, and now holds the Belden mortgage and the Belmont property.

II. The justice erred in finding that "no part of the money received on the sale of said bonds and mortgages was ever received by Abby McNett; neither was her separate estate in any manner benefited by the sale thereof, but said moneys were received by said defendant, Andrew J. McNett, and wholly appropriated to his use."

III. The justice erred in deciding that the plaintiff was not entitled to the relief demanded in the complaint, and dismissing the same, with costs of action.

1. Mrs. McNett having a separate estate, could hold and convey the same with like effect as if she were unmarried. (Laws of 1849, ch. 375.)

2. The guaranty counted upon related directly to the property to which the right of disposition attached. (*Yale* v. *Dederer*, 8 Smith, 450.)

3. The guaranty was necessary and convenient to the proper use and enjoyment of her separate property. (*Conway* v. *Smith*, 13 Wis., 125 ; *Todd* v. *Lee*, 15 id., 365 ; American Law Reg., vol. 1, p. 657.)

4. The contract was for the direct benefit of the estate itself. Mrs. McNett, being indebted to Dodge in the sum of $6,000 for the part purchase of some real estate, sold to the plaintiff two mortgages, and received the proceeds thereof in a check, payable to her order, and the same was applied by her agent to the payment of her mortgages. No other mortgage than the Dodge mortgage appears to have been executed by Mrs. McNett, and it nowhere appears that A. J. McNett, the husband and agent, had misapplied his principal's funds.

5. The guaranty of Mrs. McNett assured the title, and enlarged the purchase-money, and therefore was beneficial to her estate. (*Kolls* v. *De Leyer*, 21 How., 468.)

*A. P. Laning*, for the respondents.

I. It was alleged in the complaint and admitted by the answer, that Mrs. McNett was the owner in fee of a lot of land in the city of Buffalo, as her sole and separate property. That being such owner in April, 1855, she conveyed a portion thereof to Belden, receiving from him as security of a portion of the purchase-money, five bonds and mortgages, two of which were subsequently assigned to the decedent.

It was therefore unnecessary that there should have been any specific finding on that subject, since it was admitted upon the record, and conceded upon the trial. There was

no request to find the fact, specifically, and the exception to the refusal or omission so to find is not well taken.

Again, the fact is wholly immaterial, 'since it is found by the court that Mrs. McNett was the owner of the bonds and mortgages assigned. And there is no evidence showing that any portion of the avails of such assignment was applied to the remaining portion of this property.

II. The second exception to the finding is also untenable.

The court does find that Andrew J. McNett, as the agent of Mrs. McNett, sold to the testator of the plaintiff, and that he received the consideration paid therefor.

The court does not find that he paid out the proceeds upon her indebtedness, or in the erection of a house subsequently sold to Hazard.

1. The exception is too broad to be of avail, it should have been limited to the facts not found. A portion of the facts excepted to as not found, were in fact found by the court, and there is no request to find, or exception to a refusal to find those omitted.

2. An exception will not lie to a mere omission to find facts.

III. The fact omitted to be found to which the third exception relates, is wholly immaterial.

1. There was no request so to find.

2. The question was not what property Mrs. McNett owns, but whether, in any event, her separate estate is benefited by the transaction, so as to change it in equity.

IV. The court found as a fact that no part of the money received on the sale of the bonds and mortgages was received by Mrs. McNett. Neither was her separate estate in any manner benefited by the sale thereof, but said moneys were received by the defendant, Andrew J. McNett, and wholly appropriated to his use. To this the plaintiff excepted as contrary to evidence, and without evidence.

1. Haddock, who transacted the business for the decedent, testifies that he did not see Mrs. McNett at all.

2. Mrs. McNett testified that she did not know what was done with the money. No improvements were made on the premises with the money.

3. It also appears that bonds and mortgages were assigned in July, 1855, and the property sold to Hazard in October of the same year.

4. Also that the only remaining property of Mrs. McNett was the contract for her house and lot, on which the whole of the purchase-money was due, and one of the Belden mortgages.

So that the finding was sustained by the evidence, and there was no proof to the contrary.

V. The remaining exceptions to the report are not well taken.

1. The evidence clearly sustains the finding, that no part of the money received on the sale of the bonds and mortgages came to the hands of Mrs. McNett. And that her separate estate was not benefited by the sale thereof.

2. It was not competent for Mrs. McNett to enter into any covenants or agreements with White, by which she should charge her remaining estate for the breach. Her covenant in that respect was void, as the law stood at the time of this contract, her coverture incapacitated her from making a valid contract. (*Yale* v. *Dederer*, 1 N. Y., 84.)

Her property could only be charged in equity, upon the ground of an express charge, or actual benefit. (*Am. Coal Co.* v. *Dyett*, 7 Paige, 9; id., 20 Wend., 570; *Curtiss* v. *Engell*, 2 Sand. Ch., 287.)

VI. In any event the plaintiff's testator by his laches in enforcing the bonds at law, for the payment of interest and principal lost all right to proceed against the sureties.

BROWN, J. The defendant Abby McNett, who is the wife of the defendant Andrew J. McNett, was the owner, in her own right, of certain lands in the city of Buffalo, which she sold and conveyed to one Dexter Belden. In payment of a part of the consideration money, Belden executed and delivered to her, five bonds and mortgages, two of which she afterwards sold and assigned to the plaintiff's testator, Joel W. White, by deed of assignment bearing date July 6, 1855, with a covenant of guaranty, by herself and her husband,

Andrew J. McNett, that the money payable thereby was collectible. Afterwards, proceedings were instituted to foreclose the mortgages, and decrees obtained therein against Belden, the premises sold under the decree, leaving a deficiency still due and unpaid upon the bonds, for which deficiency judgment was rendered against Belden, the mortgagor. An execution, in the usual form, against his real and personal estate, was duly issued to the sheriff, which was afterwards returned, with the usual return indorsed thereon, that Belden had no goods and chattels or real estate whereof the deficiency could be made or collected, or any part thereof. White thereupon commenced the action against the defendant Mrs. McNett, to recover the deficiency, alleging that she had a separate estate of her own, and seeking to charge the same with the unpaid balance upon the two bonds. The sale to Belden, the execution and delivery of the mortgages, with the covenant of guaranty, the proceedings to foreclose the same, the sale of the mortgaged premises, the deficiency, and the issuing and return of the execution against Belden, were admitted by the answer, and the other allegations in the complaint were denied.

The judge, at the Special Term, found all the facts substantially as stated, and also that no part of the money received or realized from the bonds and mortgages, upon the sale thereof to White, was received by the defendant Mrs. McNett, nor was her separate estate in any way benefited thereby, but the same was received by her husband, Andrew J. McNett, and wholly appropriated to his own use, and as a conclusion of law, he found the plaintiff not entitled to the relief demanded in the complaint, and ordered judgment for the defendant Abby McNett, which was afterwards affirmed at the General Term of the eighth district, and the plaintiff appealed to this court.

Two questions were raised upon the appeal, by the plaintiff's exceptions to the finding of the judge. First, his omission to find that Mrs. McNett had a separate estate of her own, derived from a person other than her husband. I do not observe, in the case, that any request was made by the

plaintiff's counsel to the judge, to find that fact specially. And in the absence of such request I doubt very much whether he can avail himself of the omission to find the fact upon appeal. Both parties, however, as well as the judge, seem to have treated that fact as one settled by the pleadings. It was conceded by the answer that she owned real property in Buffalo, as her separate estate, part of which had been sold to Belden, and the mortgages in controversy were a part of the proceeds, and the last finding of the judge, that her separate estate was not in any manner benefited by the sale thereof, implies that she was the owner of such an estate.

The other question raised by the plaintiff's exceptions, is that the contract of sale and guaranty was not for the benefit of the separate estate of the defendant Abby McNett. To enable the plaintiff to maintain this action, and charge the unpaid balance upon the separate estate of the defendant Abby McNett, he was bound to show that the intention to charge the estate was declared in the contract of sale and guaranty, or that the consideration obtained upon the sale was for the direct benefit of the estate. Neither of these circumstances appeared upon the trial. It was in the power of the plaintiff's testator, at the time of the purchase, to have required from her an express declaration, to the effect that her estate was to be chargeable, and thus brought the contract within the principle of the case of *Yale* v. *Dederer* (22 N. Y., 450); but this was not done, and unless the proof established that the money received upon the sale was applied to benefit her separate property, it could not be made chargeable. It was well observed, at the General Term, that the presumption arising upon the face of the papers, was that the money was received by Mrs. McNett, as she, with her husband, executed the deed of assignment, wherein she acknowledged the receipt of the consideration money. And in the absence of proof to the contrary, proof that she had received the money would have been proof of its application to benefit her estate. This presumption, however, was overthrown upon the trial, by the evidence. The plaintiff's witness, Lorenzo K. Haddock, who negotiated the purchase of the

bonds and mortgages, testified that he dealt exclusively with McNett, the husband, and did not deal with or see Mrs. McNett in the transaction. The latter was herself sworn and examined as a witness, and said that none of the money came into her hands, and she did not know what was done with the money. She did, indeed, say that her husband was her financial agent, made payments, as such, upon mortgages given upon her separate property, and had charge of the building of the Hassard House, which I understand to have been a part of her property also. What new facts might have been proved had this course of examination proceeded further, we cannot say. Nor are we called upon to determine the question of the application of these moneys, as an original question. There was evidence sufficient to justify the judge to determine in favor of the defendant, and we think his finding in that respect should not be disturbed.

The judgment should be affirmed.

In which opinion all the judges concurred, except DENIO, Ch. J., and PORTER, J.

DENIO, Ch. J. This action was brought to charge the separate estate of the defendant, Abby McNett, with the money due on a covenant, by which she, together with her husband, guaranteed the collection of certain mortgages which she assigned to the plaintiff's testator. He had exhausted his remedy on the mortgages and accompanying bonds, leaving a considerable amount of the money secured by them unpaid. Under ordinary circumstances this deficiency would be a debt recoverable against the guarantors; but Mrs. McNett was, when she executed the guaranty, and still is, a married woman. She is the owner of both real and personal estate, and the question is, whether it is in the power of the court to cause it to be applied to the payment of this debt.

Mrs. McNett had property by inheritance, and she purchased and had conveyed to her after her marriage, in the year 1852, a lot of land in Buffalo. The bonds and mortgages which were assigned to the plaintiff's testator, with

the guaranty·mentioned, were given to her for portions of· this lot which she had sold ; and the remainder of her prop-erty, which·it is sought to subject in ·this action, is the pro-duce of sales of other portions of the lot. ·

The judge has found, in his conclusions of fact, that the bonds and mortgages were sold to Mr. White, the plaintiff's testator, ·by the husband of A. J. McNett, with the assent of the defendant Abby, and that they joined in the assignment and guaranty. One question is, how this finding is to be understood. She was the owner of the securities. · They ran to her as the obligee and mortgagee.· There is no pre-tense that prior to the assignment to Mr. White, she had parted with her property in them. The assignment, there-fore, which was executed, was her assignment. The subject assigned was hers, and her husband had no control over it. Her execution of the instrument was not, therefore, by way of assent to the transaction, but was the operative feature of that transaction. The more correct expression would have been that she sold and assigned the securities, and that the husband joined in the instrument to signify his assent to the ´transaction. He was in no· sense an assignor, for he had nothing to assign. But it is further found that the consider-ation of the assignment was received by the ·husband and appropriated to his own use, and that no part of it was ever received by her, and it is added that her separate estate, by which I understand the remainder of her property, was not in any manner benefited by the sale of the securities. It is not said that *she* was not benefited by the transaction, but only that her separate estate was not. The most favorable construction of the finding, is that she, possessing, as she did, the property in these securities, assigned them to White for a certain sum of money, and made a gift of that money to her husband. In connection with the sale, and forming a part of the transaction, she added her guaranty of the col-·lection of the securities, and he joined in that contract. In this he was her surety. The contract has been broken,·and she has property out of which the damages may be paid, but it is presumed that he has none.

I am of opinion that her separate estate, or what remains of it, is justly chargeable with this debt.

Her guaranty was part and parcel of the contract by which she disposed of the bonds and mortgages. That contract was made in the course of the administration and management of her separate estate. She owned the securities, and they were a part of her separate estate. She, in her character of owner, elected to dispose of them; and she was enabled to sell them to Mr. White by engaging, in effect, that if their enforcement, with legal diligence, did not produce the amount payable by their terms, she would make good the deficiency. The husband added his personal responsibility to the engagement, but that circumstance did not detract from the binding force of her contract, or prejudice the remedies which the creditor might have against her or her estate.

The estate of Mrs. McNett, in the land conveyed to her in 1852, was a legal estate in contradistinction to property vested in trustees for her sole and separate use. She held it under the statute of 1849, with the same unlimited power of disposition which she would have had if not under the disability of coverture—with the same power, in short, which any owner of property has. It would be very strange if her power to subject it to the satisfaction of her engagements were weaker than that of a *feme covert* who has property settled to her use. But that has never been contended. Judge COMSTOCK considered that question with great attention, in *Yale* v. *Dederer*, when it first came before us. (18 N. Y., 265, 272.) He stated the question to be whether a married woman might not charge her legal estate, held under this statute, in the same cases and to the extent recognized by courts of equity in respect to estates held for her separate use. After referring to the various considerations bearing upon it, he said: "My conclusion, therefore, is that although the legal disability to contract remains as at common law, a married woman may, as incidental to the perfect right of property, and power of disposition which she takes under this statute, charge her estate for the purposes and to the extent which the rule of equity has heretofore sanctioned in

reference to separate estates." Judge Harris, who prepared the only other published opinion, took precisely the same view, holding that a married woman had the same power to charge her real estate, held by legal title under the statute, which she had in respect to similar property vested in trustees to her use, under a settlement (p. 279). Now, there is an unbroken series of adjudications extending from *Norton* v. *Turvill*, 1723 (2 P. Wms., 144), down to *Owens* v. *Dickenson*, in 1840 (1 Craig & Phillips, 48), and not questioned by any later case, to the effect that the general engagements of a married woman, such as her notes, bonds, and simple contract debts, are enforceable against her separate property, by decrees of courts of equity. There have been some diversities of opinions as to the theory upon which the court interposed, but none as to its power and duty to exercise the jurisdiction. The principle finally settled upon in the last mentioned case is, that to whatever extent she has the power of dealing with her separate property, she has also the other power incident to property in general, namely, the power of contracting debts to be paid out of it.

The only extent to which this principle of equity law, well settled in England before the revolution, has been qualified in this court, is by denying its application to debts contracted by a woman as surety for her husband. That exception has been made and is now fully established. (*Yale* v. *Dederer*, *supra*, and *S. C.*, 22 N. Y., 450.) In the last mentioned report, it is stated by the reporter to have been the opinion of a majority of the court, that the intention to charge the separate estate must be stated in the contract itself, or the consideration must be one going to the direct benefit of the estate.

The liability of Mrs. McNett, in the present case, could be very well sustained upon that statement of the rule. The contract upon which the plaintiff seeks to recover this debt was made by her in a dealing with her separate estate. It was parcel of the terms of an entire contract by which she disposed of and obtained the money for a part of that estate. It was for the benefit of the estate in the sense of being for

the uses and purposes of the estate. It is of no moment that she gave away the purchase-money to her husband. She might have given it to any one else, or have spent it for dress or luxuries. The bargain by which she sold her securities and added the guaranty, was moreover for the benefit of her separate estate, inasmuch as it added to the residue of that estate the amount which was realized by the transaction. Surely, the creditor, who has trusted to her engagement, relying, as he is presumed to have done, on her ability arising from the possession of separate property, is not bound to see that she disposed of the money prudently and wisely. Suppose she had mortgaged her real estate, giving to the lender her personal covenant for repayment, can there be any doubt but that, if the mortgaged property had proved insufficient, the creditor could have resorted to her other separate property? and would it have been any answer, that she gave the money away?

A guaranty of payment or of collectibility, is a very common covenant to be added to the assignment of a chose in action. It is somewhat similar to a covenant of title in a conveyance of real estate. The statute, in terms, authorizes a married woman to dispose of her separate property in the same manner and with the like effect as if she were unmarried. It would be a solecism to hold that her bargains are valid against parties dealing with her, to the full extent of all their property, but that they are not binding on her to the extent of her separate estate.

I am in favor of reversing the judgment appealed from, and ordering a new trial.

PORTER, J., concurred with the Ch. J. POTTER was for affirmance upon the finding of fact by the referee.

Judgment affirmed.