## WITHAM *v.* COHEN *et al.*

1. A petition filed against three defendants, alleging, among other things, that the plaintiff purchased of one of the defendants certain stock in a banking corporation, which was duly transferred and assigned to him by such defendant, the latter at the same time executing a power of attorney authorizing the .stock so sold to be transferred to the plaintiff on the books

of the corporation, and further alleging that, after such sale and assignment and the execution of such power of attorney, said defendant made and executed to the other defendants a proxy or power of attorney by which the latter were authorized by said defendant to, and did in fact, at an annual meeting of the stockholders of the corporation subsequently held, vote the stock so previously purchased by the plaintiff, against his will and over his protest, all this being done in pursuance of a conspiracy among all the defendants made for the purpose of defrauding and swindling the plaintiff of his just rights in the use and control of his property, sets out facts sufficient in law to show the commission by the defendants of a tort against the property rights of the plaintiff, and consequently a cause of action accrues in favor of the latter against the former, which will prevail as against a general demurrer.

:2. Where in such petition it is further alleged that the plaintiff had an agreement with a majority of the stockholders of the corporation, whereby he was to be elected at the ensuing annual meeting of such stockholders president of the bank for a stated term of years and at a given salary per annum; that he owned himself and under this agreement held proxies to vote such an amount of the capital stock of the corporation, in connection with that purchased from one of said defendants, as would have secured his election as contemplated; that on the day of said meeting he still held and was prepared to vote said proxies, and accordingly would have been elected president of the bank, but for the fact that the defendants, knowing of the existence of the arrangement by which he was to be elected president and in order to defeat his election, "knowingly, wilfully, maliciously and corruptly" appeared at said meeting and voted, against his consent and over his protest, the proxy so wrongfully and illegally executed, thus defeating his election as president of the corporation: such allegations, as against a general demurrer, are good as a basis for the recovery of damages flowing from the defeat of the arrangement of the plaintiff by which he alleges he would have been elected president of the bank, resulting from the tortious and intentional action of the defendants.

3. As the case goes back for another hearing, and inasmuch as there may be hereafter amendments made or proofs submitted materially changing its present aspect, no intimation as to the elements or measure of damages which the plaintiff may be entitled to recover is now made, except that in so far as the recovery, if any, may relate to loss of salary, it would, in

any event, be limited to one year's salary, the declaration. showing that the bank's officers were to be elected annually.

Argued January 7,—Decided March 29, 1897.

Action for damages. Before Judge Reid. City court. of Atlanta. January term, 1896.

*John F. Methvin* and *Van Epps, Ladson & Leftwich,.* for plaintiff.

*Shannon & Worley* and *Ellis & Gray,* for defendants.

LITTLE, Justice.

Witham filed in the city court of Atlanta his action for damages against Cohen, Arnold and Smith jointly. The cause coming on to be heard, the defendants demurred generally, on the ground that the declaration set forth no sufficient cause of action against them. The court below sustained this demurrer and dismissed the petition; whereupon the plaintiff excepted and assigns error upon the judgment of the presiding judge sustaining the demurrer and dismissing his petition. According to the allegations. contained in the petition, Witham owned certain shares. of stock in the Bank of Elberton, and on a given date purchased five additional shares from Cohen, one of the defendants, who in turn executed to Witham a transfer and assignment of the stock, together with a power of attorney authorizing the bank's cashier to transfer the stock to. Witham on the books of the corporation. Subsequent to. this purchase, there was held an annual meeting of the. stockholders of the bank, on the 9th day of April, 1895, for the purpose of electing a board of directors for the ensuing year and the election of a president, vice-president and cashier. At such meeting, according to the rules of the. bank, the owner, holder or legal representative of each share of stock was entitled to one vote in the election of officers and directors of the bank. On the day of the annual meeting Witham owned, and controlled by proxy, a majority of the stock of the bank, which entitled him to.

the office of president. Prior to this annual meeting Witham had made an arrangement and agreement with the majority of the stockholders of the bank to accept the office of president of the bank for a term of five years, at a yearly salary of $500; and accordingly, by virtue of this agreement and of the fact that on the day of the meeting he owned and controlled in his own right and by proxy a majority of the stock of the bank, he would have been elected to the office of president, but for the action of the defendants hereinafter set out. Each of the defendants knew of the purpose and desire of the majority of the stockholders of the bank as to the election of Witham to the office of president; they had knowledge of the fact that Cohen had sold the five shares of stock to Witham; and, with this knowledge and in order to thwart the will and purpose of the majority of the stockholders and defeat the election of Witham as president of the bank at the annual meeting, and in pursuance of a conspiracy among them made for the purpose of defrauding and swindling Witham of his just rights in the use and control of his property, Cohen, after such sale and transfer of his stock to Witham and the delivery of the power of attorney by which the same was to be transferred on the books of the corporation, made and executed to Arnold and Smith a proxy or power of attorney by which the latter were authorized by Cohen to, and did in fact, knowingly, wilfully, maliciously and corruptly, and for the purpose of defeating Witham's election, appear at the annual meeting and vote the stock so previously purchased by and assigned to Witham, against his will and over his protest, in consequence of which, his election as president, which otherwise would have been had, was defeated, and Witham was thereby deprived of the office of president and the salary appertaining thereto and otherwise greatly injured and damaged in his estate in the manner and sums set out in his petition.

1. According to the allegations made in the petition, the

rightful owners of stock in the Bank of Elberton were entitled to one vote for each of such shares, at the annual meeting held for election of officers and directors of the bank; and by reference to the general law under which this bank was incorporated (Acts 1890-91, p. 172), it will be observed that such voting power is there established. This voting power is rightfully to be exercised by such person only as is invested with the title and ownership of the stock. Regardless of the question as to whether Witham, as between himself and the bank, had taken such steps as were required by the corporation to entitle him to vote the stock purchased from Cohen, certainly as between Witham and Cohen, the latter, having parted with the stock, necessarily had parted also with all the rights appertaining thereto, and divested himself of all the right to exercise any of the powers or privileges inhering in and incident to its ownership. So far as he was concerned, the sale passed to Witham both the equitable and legal title, and thereafter the legal and equitable right to vote the stock was vested in Witham. Cohen had precluded himself from exercising or attempting to exercise such right. 1 Thompson on Corporations, §730; 14 Am. Dec. 526. In 34 N. Y. 80, the rule is stated to be: "Where the stock of a corporation is, by the terms of its charter or by-laws, transferable only on its books, the purchaser who receives the certificate, with power of attorney, gets the entire title, legal and equitable, as between himself and his seller, with all the rights the latter possessed; and as between himself and the corporation, he acquires only an equitable title, which they are bound to recognize and permit to be ripened into a legal title, when he presents himself, before any effective transfer on the books has been made, to do the acts required by the charter or by-laws, in order to make a transfer." Of like import, see 46 N. Y. 331. It being, therefore, beyond Cohen's power to confer upon his codefendants, by proxy executed to them, any legal or equitable right to

·vote the stock previously sold and assigned to Witham, the execution and voting of such proxy, in pursuance of the alleged conspiracy on the part of all of the defendants to defraud and injure Witham, constituted a direct invasion of the legal rights of the latter and amounted to the commission of a tort injuriously affecting the property rights of Witham, in consequence of which a cause of action accrued to him. Civil Code, §3807, par. 1; *Ellington & Bennett*, 59 *Ga.* 286; 5 Am. & Eng. Enc. L., p. 4, par. 3, and authorities there cited. Whether or not Witham was at the ·time of the annual meeting in a position, relatively to the bank, to exercise the right to vote these five shares of stock, is a matter of no consequence on the question of his right to maintain the action, since the right itself, as between him and these defendants, was absolute. Having the right, his failure, if such was the case, to put himself in a position to exercise the same relatively to the bank, could under no circumstances license these defendants to vote the stock. His failure to exercise a right vested exclusively in him, ·would not confer upon others authority to do so, though they may have been invested with the right prior to Witham's acquisition of the stock.

2. The facts upon which the ruling made in the second head-note rests, are therein succinctly stated. Whether the petition filed in this case was subject to special demurrer for any cause, or whether Witham may hereafter submit such proof as will entitle him to a recovery of damages predicated upon the loss of any portion of the salary which it is alleged he would have received had not his election been defeated, are questions with which we are not now concerned, since, under the general demurrer filed, the allegations contained in the petition are to be taken as true and Witham's rights determined upon the state of facts as they appear in the petition. From these facts it appears that Witham, on a given date, would have been ·elected president of the bank and as such officer would have re-

ceived an annual salary of five hundred dollars, but for the
fact that the defendants, knowing of the existence of the
arrangement by which he was to be elected president, and
in order to defeat his election, "knowingly, wilfully, mali-
ciously and corruptly" appeared at the meeting and over
his protest and against his consent voted the proxy which
had been wrongfully and illegally executed by Cohen,
thus defeating Witham's election as president of the cor-
poration.   It was insisted, however, that, although the ac--
tion of the defendants may have been tortious, yet the
damages claimed for loss of salary were too remote to form
the basis of a recovery.   In this contention we are not pre--
pared to concur.   The rule governing the recovery of conse--
quential damages for torts, not malicious, is well stated in
the case of Warwick v. Hutchinson, 45 N. J. L. 61, where
it is said: "It is a fundamental principle of law, applicable
alike to breaches of contract and to torts, that in order to
found a right of action there must be a wrongful act done
and a loss resulting from that wrongful act.   The wrongful
act must be the act of the defendant, and the injury suf-
fered by the plaintiff must be the natural, and not merely
a remote consequence of the defendant's act.   The wrong
done and the injury sustained must bear to each other the
relation of cause and effect; and the damages, whether
they arise from withholding a legal right or the breach of
a legal duty, to be recoverable, must be the natural and
proximate consequence of the act complained of."   Citing
2 Greenl. Ev., §§254, 256; Sedg. Dam. 31; 13 C. B. 285;
L. R. 2 Exch. 340; L. R. 3 Q. B. 25; 5 Vroom (N. J.),
296; 6 Vroom (N. J.), 17; 5 Stew. Eq. (N. J.), 647; 33
N. Y. 371; 36 Pa. St. 360.   Again, in 1 Sutherland on
Damages, §16, p. 32, the doctrine is laid down, that if the
act complained of was wrongful, and the injury sustained
resulted in the natural order of cause and effect, the per-
son complaining thereof is entitled to recover, and there
need not be in the mind of the individual whose act pro--

duces the injury the least contemplation of the consequences of his conduct, but he is responsible, because the result proximately follows his wrongful act. By section 3913 of the Civil Code it is provided that "Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered. But damages traceable to the act, but not its legal or material consequence, are too remote and contingent." Without regard to malice in the commission of the alleged tort, the averments of the petition would seem to fix the wrongful act of the defendants as the proximate cause of Witham's defeat in the arrangement by which he was to be elected president of the bank. There is nothing in his pleadings from which it could be adjudged that other circumstances or independent agencies intervened between the act of the defendants and the injury, or preponderated largely in causing the injurious effect. On the contrary, his pleadings establish between the wrongful act and the injury sustained the relation of cause and effect, and characterize the tortious act of the defendants as the efficient and predominating cause producing his defeat. Moreover, it is alleged that the act of the defendants was done "knowingly, wilfully, maliciously and corruptly," and for the purpose of defeating the election of Witham as president of the bank. By Civil Code, §3914 it is provided: "If, however, the tort is committed, or the contract broken, or the duty omitted, with a knowledge and for the purpose of depriving the party injured of such benefits as are specified in the last paragraph [§3913], then the remote damages are made by such knowledge and intent a proper subject for consideration by the jury." We think, therefore, that, as against a general demurrer, the petition set out facts which were good as the basis for the recovery of such damages flowing from the defeat of the arrangement of the plaintiff by which he alleges he would have been

elected president of the bank, as might be allowable under·
the rules of law applicable thereto.

3. But as the case will go back for another hearing, and
as it may hereafter, by amendments made or proofs sub-·
mitted, be materially changed in aspect, we forbear to·
make any intimation as to the elements or measure of dam-·
ages which the plaintiff may be entitled to recover, except
to say that, in so far as the recovery, if any, may relate to·
loss of salary, it would in any event be limited to one year's·
salary.    Although it is alleged that Witham was to be·
elected for a term of five years at an annual salary of $500,
yet it also appears from the petition that the bank's officers·
were to be elected annually.    We hold, therefore, that if
the plaintiff shall establish his right to recover any dam-·
ages whatever predicated upon loss of salary, he would in·
no event, under the facts as alleged, be entitled to recover·
for more than one year's loss of salary; and this for the·
obvious reason that the injurious effects of the tort could·
extend no further than for the time for which he could
have been chosen and would have been chosen but for the
act of the defendants.    The tort whereby he sustained his·
defeat could not have damaged Witham in a sum greater·
than that which his election would have secured to him.
But if it should be contended that the injurious effects·
of the tort for·any reason would extend to subsequent elec-·
tions, the damages for such subsequent years would be·
excluded because entirely too remote, uncertain and pros-·
pective to form the basis of a recovery.    The proxies held·
by Witham and upon which his election largely depended,
would be subject to revocation at any time at the pleasure
of the stockholders represented thereby; the original stock-·
holders executing such proxies may in the meantime have
sold and disposed of their holdings, the interest of the·
corporation may have so changed as to render it desirable·
to elect some person other than Witham, and various other·
contingencies intervene which render such damages en-

tirely too conjectural and speculative to enter as an element
of damage into the recovery.

   *Judgment reversed.   All the Justices concurring.*