### CONSOLIDATED TEXTILE CORPORATION v. DICKEY et al.

(District Court, N. D. Georgia.   June 29, 1920.)

No. 144.

1. **Courts ☞272—Federal court without jurisdiction of personal suit between nonresidents; "suit to enforce lien or remove incumbrance."**

    A suit by a stockholder of a corporation to cancel an agreement between other stockholders creating a voting pool of their stock is not one to enforce a lien or remove an incumbrance, within the meaning of Judicial Code, § 57 (Comp. St. § 1039), and under section 51 (section 1033), where complainant is a nonresident of the district, it cannot be maintained against a defendant, who is also a nonresident, over his objection.

2. **Corporations ☞190—Party to pooling agreement indispensable party to suit to cancel or enjoin enforcement.**

    To a suit by a stockholder to cancel a pooling agreement between holders of a majority of the stock, not unlawful in itself, but the alleged purpose of which is the making of a contract employing one of their number as sales agent of the corporation, and to enjoin the making of such contract, such proposed agent *held* an indispensable party defendant, and the suit *held* not maintainable, where he could not be brought within the jurisdiction of the court.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the Consolidated Textile Corporation against James L. Dickey and others. On motions to dismiss. Motions sustained.

King & Spalding, McDaniel & Black, and Anderson, Rountree & Crenshaw, all of Atlanta, Ga. (E. R. Black, Clifford L. Anderson, and Sanders McDaniel, all of Atlanta, of counsel), for complainant.

Reuben R. Arnold and Brandon & Hynds, all of Atlanta, Ga., for defendants.

SIBLEY, District Judge. The petition is brought by the Consolidated Textile Corporation, a corporation of Delaware, against Floyd W. Jefferson, a citizen of New Jersey, and James L. Dickey and six others, citizens of Georgia and residents within this district.

Briefly stated, it sets forth that the plaintiff was engaged in acquiring the ownership or control of a majority of the stock in the Exposition Cotton Mills, a Georgia corporation, when Floyd W. Jefferson pursuaded some of the stockholders who were dealing with the plaintiff to discontinue their dealing and to join him and the other defendants in pooling a majority of the stock of the Exposition Cotton Mills under a voting trust agreement in which Jefferson and the other defendants were to be the voting trustees, irrevocably authorized to vote the pooled stock as a majority of them might decide, the pool to continue until December 31, 1922, with the right of a majority of the pooled stock to extend it until December 31, 1927; the stock to be transferred to First Trust & Savings Corporation as trustee of the title thereto.

It is alleged that the purpose and agreement in making the pool was that Floyd W. Jefferson, or some corporation represented by him, should be appointed sales agent for the Exposition Cotton Mills for the period covered by the pool; the terms of his intended contract as agent not being set forth, nor any allegation made that they were unlawful or imprudent. It is stated that, to induce other stockholders to join the pool, the declaration of a stock dividend was promised, though under the charter of the corporation its stock can be increased only by a vote of two-thirds of the stockholders. It is averred that a bare majority of the stock is in the pool, that the shares have been transferred to the trustee, and that the voting trustees will, unless restrained, elect themselves as directors, recommend and have issued the stock dividend, and make the sales contract which is in contemplation.

The relief prayed is that the pooling agreement be declared null and void, and that it be delivered up and canceled; that the voting trustees be enjoined from exercising any power as such, or dealing with the pooled stock under the terms of said agreement; that they be enjoined from making any contract with the defendant Jefferson as sales agent upon any terms; and that the defendants, who are directors of the mill, be enjoined from using their power as such to declare a stock dividend or change the status of the mill as to its capital or surplus.

The defendant Jefferson moves the dismissal of the bill as to him, because this court is without jurisdiction over him as a citizen of New Jersey; and the other defendants move the dismissal on the ground, among others, that the Exposition Cotton Mills and the First

Trust & Savings Corporation are indispensable parties and are not made defendants, and that Floyd W. Jefferson is an indispensable party and cannot be held as a defendant.

[1] 1. Jefferson is not an inhabitant of the Northern district of Georgia, and under Judicial Code, § 51 (Comp. St. § 1033), cannot ordinarily be sued here. Although the jurisdiction is founded wholly on the fact that the suit is between citizens of different states, and might therefore have been maintained in the district of the residence of the plaintiff, the case is not helped thereby, for the plaintiff is a corporation of the state of Delaware. Nor does the joinder as defendants of persons who are residents of this district alter the case as to Jefferson. Upon any cause of action in personam he cannot be sued here without his consent. Camp v. Gress, 250 U. S. 308, 39 Sup. Ct. 478, 63 L. Ed. 997. The suggestion that under section 57 (Comp. St. § 1039) jurisdiction may be exercised over him by treating this suit as one "to remove any incumbrance or lien or cloud upon the title to real or personal property within the district," is untenable. The judgment in such a case is, by the language of the section, to—

"affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district."

It would be difficult to fix upon any property as the subject of the suit within the district. The title to none is in dispute. None is sought to be recovered. There is no incumbrance or lien or cloud upon the title to any property of the plaintiff in any ordinary acceptance of the term. While it is a suit to cancel a written instrument, that instrument does not purport to convey or affect the title of plaintiff to the shares it owns. The true cause of complaint is the conduct of the defendants in reference to their own property, which is claimed unlawfully and injuriously to affect the property of plaintiff company, a violation of the maxim "Sic utere tuo ut alienum non lædas." The unlawful use of a proxy to vote stock to the injury of another stockholder was treated as a tort in Witham v. Cohen, 100 Ga. 670, 28 S. E. 505, and such seems to be its true legal character. So concluding, the question is decided by Ladew v. Tennessee Copper Co., 218 U. S. 357, 31 Sup. Ct. 81, 54 L. Ed. 1069, where it is held that a bill to abate and enjoin a nuisance against inhabitants of the district and one who was an inhabitant of another state could not be maintained as to the latter under the provisions now found in section 57. This court, therefore, has no jurisdiction over Jefferson, and the suit must be dismissed as to him.

[2] 2. Thereupon the other defendants move a dismissal for want of parties indispensable to the relief sought, to wit, Jefferson, the Exposition Cotton Mills, and the First Trust & Savings Corporation. The two last named are within the court's jurisdiction, and as to them not dismissal, but a requirement to make them parties, would be in order; but if Jefferson be an indispensable party, since he refuses to submit to the jurisdiction, the court cannot proceed. It is apparent that the relief of cancellation invoked could not be applied, without either destroying the rights of Jefferson under the alleged agreements, he being unheard, or else leaving the other defendants exposed to litigation

with and possible liability to him. If the contract is either illegal or fraudulent, since he is a party to it and claims benefits under it, it ought not to be so declared without hearing him and binding him by the adjudication. It cannot be said that he is sufficiently represented in the other parties to it. The petition attributes to him special rights if the agreement be valid, and prays for special relief as to a further contract to be made with him. No one represents his special interests. It was so ruled in a similar situation in Ryan v. Seaboard Railroad (C. C.) 89 Fed. 397 (5). In Shields v. Barrow, 17 How. at page 139, 15 L. Ed. 158, indispensable parties are thus defined:

"Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience. A bill to rescind a contract affords an example of this kind; for, if only a part of those interested in the contract are before the court, a decree of rescission must either destroy the rights of those who are absent, or leave the contract in full force as respects them, while it is set aside, and the contracting parties restored to their former condition, as to the others."

No difference is perceived between the case of a party to a contract seeking rescission and that of a person not a party seeking cancellation. See, also, Barney v. Baltimore City, 6 Wall. 280, 18 L. Ed. 825.

3. The same reasoning applies to the remedy by injunction. It is doubtless true that a direct and positive tort may, other necessary requisites of equitable jurisdiction being present, be arrested by injunction against persons about to commit it within the jurisdiction, though others interested in its commission be without the jurisdiction. One may be enjoined from destroying the shade trees of another though under contract so to do with a person beyond the reach of the court. But here none of the acts sought to be enjoined are in themselves a wrong to the plaintiff. The stock cannot be increased, as the bill discloses, without the concurrence of two-thirds of the stock, and upon the face of the bill an injunction is not needed to prevent that. The majority stockholders have the right to elect such directors as they desire, and to have them contract with whom they like to serve the corporation as sales agent, and they may exercise this right as well by proxy as in person. The foundation of the complaint is that they have contracted with Jefferson and each other so to do, and that the contract is such as to render illegal that which was otherwise legal. Its meaning and validity are the heart of the controversy. An injunction against some of the parties to it, effectually prohibiting the execution of it, would be equivalent to its cancellation. Neither remedy should be applied without jurisdiction over all the parties to it.

In Bank v. Carrollton Railroad, 11 Wall. 624, 20 L. Ed. 82, the plaintiff's right depended on a settlement of partnership affairs, one partner who had transferred his interest to the plaintiff could not be joined without ousting jurisdiction, and the bill was dismissed. In Ribon v. Railroad Companies, 16 Wall. 446, 21 L. Ed. 367, minority stockholders sought to set aside for fraud a sale of corporate assets which had been brought about by the majority. The corporation and the purchaser were made parties, but the majority stockholders and the

trustees of the mortgages which got the proceeds of the sale were not. The bill was dismissed; the court saying:

"The rule in equity as to parties defendant is that all whose interests will be affected by the decree sought to be obtained must be before the court; and if any such person cannot be reached by process—do not voluntarily appear, or from a jurisdictional objection going to the person in the courts of the United States, cannot be made parties—the bill must be dismissed. Where a decree can be made as to those present, without affecting the rights of those who are absent, the court will proceed. But if the interests of those present and of those absent are inseparable, the obstacle is insuperable."

And see Coiron v. Millaudon, 19 How. 113, 15 L. Ed. 575.

In Northern Indiana Railroad Co. v. Michigan Central R. Co., 15 How. 233, 14 L. Ed. 674, the very remedy sought here, to wit, injunction, was sought against the building of a railroad in alleged contravention of exclusive rights of the plaintiff. The party defendant had contracted with New Albany Company, nonresident in the district and state, to do the work. It was said:

"In a case like the present, where a court cannot but see that the interests of the New Albany Company must be vitally affected, if the relief prayed for by complainants be given, the court must refuse to exercise jurisdiction in the case, or become an instrument of injustice."

On this and another ground the bill was dismissed. Similarly the Supreme Court, in a bill to annul the effort of majority stockholders to consolidate two competing railroads by pooling their stocks, the holding company having some analogy to a voting trustee, dismissed the proceeding for lack of parties, although they were beyond the jurisdiction of the court or would defeat the jurisdiction. Minnesota v. Northern Securities Co., 184 U. S. 199, 22 Sup. Ct. 308, 46 L. Ed. 499. Where corporate manipulation by the majority stockholders was attacked by the minority, an interested corporation was thought an indispensable party, though not subject to process, and the lower court dismissed the bill, which action was not disturbed by the Supreme Court in Bogart v. Southern Pacific Railroad, 228 U. S. 137, 33 Sup. Ct. 497, 57 L. Ed. 768; the question being held one of general law. By reason, therefore, of the circumscription of the power of this court, it is unable to grant the relief prayed for, and the bill must be dismissed without prejudice.

It would be vain as well as improper to pass upon any other question raised and argued, in view of the conclusion reached on this.