157 A.2d 784 (1960)
DOLESE BROS. CO., a Delaware corporation, Roger Dolese, individually, and The Dolese Company, a Delaware corporation, Defendants below, Appellants,
v.
Margaret Dolese BROWN, Mary Dolese Courtis, and Peter Dolese Courtis, David Michael Courtis, Margaret Weber Courtis, and Jane Appleton Courtis, minors, by their Guardian Mary Dolese Courtis, Plaintiffs below, Appellees.
No. 58, 1959.
Supreme Court of Delaware.
January 27, 1960.
Robert H. Richards, Jr., and Stephen E. Hamilton, Jr., of Richards, Layton & Finger, Wilmington, and Embry, Crowe, Tolbert, Boxley & Johnson, of Oklahoma City, Okl., for appellants.
Richard F. Corroon, of Berl, Potter & Anderson, Wilmington, and Fischer, Sprague, Franklin & Ford, of Detroit, Mich., for appellees.
Before SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ.
*785 SOUTHERLAND, Chief Justice.
This is a minority stockholders' suit to redress corporate wrongs alleged to have been committed by the president and dominating director of Dolese Bros. Co., a Delaware corporation.
The following statement of facts is based on the complaint, the allegations of which must, for the present purpose, be taken as true.
For some years prior to September, 1946 (a time hereafter shown to be important), Dolese Bros. Co. was engaged in quarrying and selling limestone, gravel and other building materials and in conducting a "transit-mix" concrete business. It was a closely held family corporation. There were 3,000 shares of stock outstanding, 1200 of which were owned or controlled by the Schofield branch of the family. The other shares were owned, legally or equitably, by Roger Dolese, by his brother, David, by his mother, Jane Dolese, and by his sisters, Margaret and Mary.
Roger was the president and his brother-in-law, William Schofield, the vicepresident. They managed the business.
On February 6, 1942, in order to preserve the family control, all the stockholders executed an agreement that they would not sell any of their stock in Dolese Bros. to any one not a stockholder of that company without first offering it to the other stockholders "and to the company".
Sometime around September, 1945, a dispute arose and continued between Roger and Schofield relating to matters of business policy. Schofield at times threatened litigation.
In November, 1945, Roger obtained from his sister Margaret a power of attorney purporting to give him full power over her stock, not only in respect of voting, but also in respect of any sale, disposition or pledge of the shares. It purported to be irrevocable during a period ending March 16, 1951.
Similar powers of attorney were given to him by the other members of the Dolese family.
*786 The disputes between Roger and Schofield came to a head in September, 1946. At a stockholders' meeting held September 9, attended by all the stockholders except the Schofields, William Schofield was eliminated as a director. Roger, Jane, and George Howard (alleged to be subservient to Roger) were elected directors.
About the same time the Schofields offered to sell their stock in Dolese Bros. for $725 a share, or $870,000, a sum less than its real value, as Roger knew.
At this time the 3,000 shares of stock were held as follows:

Plaintiff Margaret Dolese
 Brown 400 shares
Roger Dolese, trustee for
 plaintiff Mary Dolese
 Courtis 200 shares
Defendant Roger Dolese 600 shares
David B. Dolese 400 shares
Jane Weber Dolese 200 shares
Gertrude Schofield, trustee 600 shares
Gertrude Schofield 400 shares
Elsie Harrison Dolese 200 shares

The corporate enterprise had prospered. In September, 1946 it had quick assets of upwards of a million dollars, including cash in excess of $870,000. In addition it had extensive credit resources. The transit-mix business was its most profitable part.
At this time Roger occupied a position of trust and confidence with respect to the other members of the family. Margaret and Mary, his sisters, were young and without any experience or understanding of business affairs and relied upon Roger whom they loved and respected.
By virtue of his own holdings, and his representation of his family's holdings, either as trustee or agent, Roger at the time referred to controlled three-fifths of the voting stock.
Having received the Schofields' offer to sell their shares, Roger proposed to Margaret and Mary that he and they and the other members of the Dolese family should buy the stock. Roger concealed from them the fact that the corporation could have bought it without danger to its business future, and induced them to believe that Dolese Bros. was not in a condition to make the purchase. Roger's brother and sisters declined to make the purchase, Margaret and Mary lacking the ready cash and being unwilling to borrow money.
Thereupon, the complaint charges, Roger devised a fraudulent plan to enrich himself at the expense of the other Dolese stockholders. The following steps were taken:
(1) Roger incorporated The Dolese Company, wholly owned by him.
(2) Dolese (not Dolese Bros.) on November 19, 1946, agreed to buy the Schofield stock.
(3) On November 26, 1946, Roger called and held a special meeting of the directors. It was attended only by Roger and Howard. A resolution was adopted waiving the corporation's right to purchase the Schofield stock. A formal instrument of waiver was executed, signed for the corporation by Roger as President, by Roger personally, and by Roger as trustee or attorney-in-fact for all the other Dolese Bros. stockholders.
This waiver, it is alleged, was obtained by fraudulent concealment of the corporate right to purchase, of the intention to execute the waiver, and of the corporate financial condition.
(4) On the following day, November 27, Roger called and held a special meeting of stockholders, without giving any actual notice to the other Dolese Bros. stockholders. The meeting was attended by Roger, as a stockholder in his own right and as trustee or attorney-in-fact for the others, and by Howard as attorney-in-fact for Dolese Bros.
The meeting resolved upon a partial liquidation of Dolese Bros., and a distribution of 40% of the physical assets and net current *787 assets to Dolese upon the surrender of the Schofield stock (which was 40% of the outstanding stock of Dolese Bros.) for cancellation and retirement. This distribution was to be made to Dolese by the payment of $587,693.05 in cash and $303,862.48 in property. This was carried out. The property transferred consisted of the assets devoted to the transit-mix business, the value of which, it is alleged, greatly exceeded the sum of $303,862.48.
(5) Roger paid the Schofields for their stock. In effect the payment was made with the cash transferred to Dolese plus a sum of $350,000 borrowed from a bank on the security of Roger's stock and a chattel mortgage on the assets transferred to Dolese.
(6) On November 29 David, Jane, and Margaret Dolese executed a document certifying that they had read the minutes of the stockholders' meeting of November 27, and that they ratified and confirmed all the action taken; that Roger had discussed with them, prior to the meeting, the action that would probably be taken, and they had advised him that such action was satisfactory. This ratification, it is alleged, was obtained by the use of false and misleading statements in a number of respects, and was given without full understanding by the signers of the pertinent facts.
The foregoing summary of facts is taken from the allegations of the complaint. These allegations, the Vice Chancellor held, were sufficient to withstand a motion to dismiss.
Defendants appeal.
The case made by the bill is that of a president and dominating director dealing with himself to the detriment of his fellow shareholders. If the allegations are true, Roger, as a result of the various steps taken, has appropriated for himself the most valuable part of the corporate business by using corporate funds for the purpose, and has secured the consent of the other stockholders thereto by false representations and concealment. As to the use of corporate funds see Loft, Inc. v. Guth, 23 Del.Ch. 138, 2 A.2d 225. The fact that his own stock was also used to obtain credit is immaterial. The purchase of the Schofield stock could not have been made without corporate funds. As to the use of proxies to promote the "peculiar personal interest" of a director, without the full knowledge of the stockholder-principal, see Rice & Hutchins, Inc. v. Triplex Shoe Co., 16 Del.Ch. 298, 147 A. 317, 332. Citing the leading case of Lofland v. Cahall, 13 Del.Ch. 384, 118 A. 1, Chancellor Wolcott said:
"If directors who are the agents of the stockholders are invested with a fiduciary character which inhibits them from passing judgment where their own peculiarly personal interests are involved, as was held in the Lofland case, I am unable to see why on principle the same sort of inhibition is not imposed on those who act as proxies for a stockholder."
To the same effect is Gottlieb v. McKee, 34 Del.Ch. 537, 107 A.2d 240.
Moreover, in the case before us the 1942 agreement gave the corporation some sort of expectancy in the purchase of the stock. Cf. Guth v. Loft, 23 Del.Ch. 255, 5 A.2d 503. The exact scope of that expectancy is not important; it is enough to say that Roger recognized its existence and undertook (in effect) by unilateral action to waive the corporate rights for his own benefit.
To meet this case Roger advances the following argument:
Since this is a stockholders' derivative suit, the complaining stockholders have no case if the corporation cannot sue. The corporation cannot sue because the stockholders unanimously consented to the transaction.
The obvious reply is that, according to the complaint that consent was not freely given with full knowledge of the facts. *788 Defendant argues that when a meeting of stockholders has been held, and corporate action authorized by the use of general proxies permitting the exercise of unlimited discretion by the proxy holder, and that action is duly taken, the stockholder ordinarily cannot later repudiate the action of his agent. As a general proposition, this is correct. Gow v. Consolidated Coppermines Corp., 19 Del.Ch. 172, 195, 165 A. 136. But that rule has no application to a case such as this, in which the dominating director is charged with using the proxies to commit a fraud concealed from the stockholders whose vote is necessary to accomplish it, and in which no rights of third parties are affected.
Defendants argue that even if any wrong was committed it was a personal wrong inflicted on his principals and cestuis que trustent, which can be redressed only by a suit against him as agent or trustee. We do not agree. It was both a corporate and an individual wrong, and the stockholders are entitled to seek redress for the corporate wrong.
Defendants cite several cases for the proposition that a trustee's vote at a corporate meeting is binding on the corporation, although the cestuis que trustent may have an action against the trustee or fiduciary. We have examined them and (with one possible exception) they are not in point here. Thus in Market St. Ry. Co. v. Hellman, 109 Cal. 571, 42 P. 225, there was no corporate wrong committed. The case holds only that third persons cannot challenge the vote of a trustee at a corporate meeting. In Witham v. Cohen, 100 Ga. 670, 28 S.E. 505, no corporate wrong was charged. Vogt v. Vogt, 119 App.Div. 518, 104 N.Y.S. 164 was essentially an action to recover damages for loss of value of plaintiff's stock.
The case of Felsenheld v. Bloch Bros. Tobacco Co., 119 W.Va. 167, 192 S.E. 545, 123 A.L.R. 334, does contain language that appears to give some support to defendant's contention. In that case one of four trustees of corporate stock and a cestui que trust joined in a derivative suit to redress wrongs committed against the corporation. The other three trustees, who managed both the trust and the corporation, were alleged to be the wrong-doers. The complaint was, for the most part, sustained against demurrer. As to one charge of a "gratuitous" salary paid the president the court appears to have held that the stockholders' approval barred any action by the corporation, even though that approval depended upon the vote of the three trustees. It is to be noted that only one of three trustees received the salary complained of, so that there was some basis for the holding that the vote was binding on the corporation. But even if the case can be regarded as authority in defendants' favor, we must respectfully decline to follow it.
We agree with the Vice Chancellor that the complaint here states a cause of action.
Defendants make two other points:
First, it is said that Roger has not been sued as trustee for Mary Dolese Courtis and others, and that he has not appeared as trustee. Defendants accordingly say that the complaint should be dismissed for want of an indispensable party.
It is true that ordinarily a trustee is an indispensable party to a suit involving the administration of his trust. Lewis v. Hanson, Del., 128 A.2d 819, 835. But the rule is not applicable here. The primary purpose of this suit is to call Roger to account not for breach of his duties as trustee of the Courtis trust but for breach of his fiduciary duty as president and dominating director of Dolese Bros. Co. The case falls within the recognized exception to the general rule that if the trustee fails or refuses to enforce an action on behalf of the trust against a third person, and if he is beyond the jurisdiction of the court, the beneficiary may sue and the case may proceed without him. Ettlinger v. Persian Rug & Carpet Co., 142 N.Y. 189, 36 N.E. 1055; 2 Scott on Trusts, §§ 282.1 and 282.2; Restatement, Law of Trusts, § 282(2) and (3). "A court of equity will not permit the *789 wrong-doer to escape liability as a result of the accidental circumstance that the trustee is not available." Scott, § 282.2. Here there is a special reason why the exception applies, because the "third party" is Roger himself in another capacity.
Second, it is argued that the complaint must be dismissed as to Margaret because she read the minutes of the stockholders' meeting of November 27 and expressly ratified all that was done. In the light of the allegations of the complaint, this contention presents a question of fact, i. e., whether she had full knowledge of all pertinent matters when she signed the ratification. This question must be resolved by the Vice Chancellor after full hearing. As the Vice Chancellor said, the defendants are not now entitled to judgment as a matter of law.
The order of the court below is affirmed, and the cause is remanded for further proceedings not inconsistent with this opinion.