THE PEOPLE *ex rel.* WILLIAM PICKERING, Appellant, *v.* JOSEPH DEVIN *et al.,* Appellees.

### APPEAL FROM EDWARDS.

Where stock owned by the State, in a railroad corporation, was legally sold and a certificate thereof given, assigned by the Governor, by indorsement thereon, the purchaser and assignee of such stock had a right to vote thereon for the election of Directors, unless some statute of the State, or by-laws of the company prescribed some other mode of conveyance or additional formality.

THIS was a proceeding by quo warranto, commenced by the State's Attorney, on the relation of Pickering, against Joseph Devin, Elisha Embree, Robert Parkinson, J. N. Jacques, George W. Brown, Francis B. Thompson, Jonas Hardy, Samuel Thompson and James H. Embree, for usurping the offices of President and Directors of the Alton, Mount Carmel and New Albany Railroad Company. The defendants pleaded to the information, that on the sixth day of June, A. D. 1853, there was an election held for nine directors of said company, at which all stockholders, legally qualified, had been notified to appear and cast their votes, at which time the respondents were duly elected, having received a majority of all the votes of the legally qualified stockholders, and were so declared elected; that they were each of them eligible, having the legal qualification required by the acts incorporating said company. To this plea the complainant filed several replications—denying that a legal election was held on the said sixth day of June, 1853—denying that the respondents received a majority of all the votes of the legally qualified stockholders on the said day—denying that the respondents were stockholders in the corporation. At September term, 1854, of the Edwards Circuit Court, the cause having been submitted to MARSHALL, Judge, without the intervention of a jury, judgment was entered for the respondents; thereupon Pickering took an appeal.

The evidence showed that a notice had been given as pleaded; that the election was held as notice required, and that the respondents were declared elected; that a book containing a list of stockholders was produced, showing that each of the respondents held two shares of stock in said corporation, and also a valuation made to relator, showing him to be entitled to 1494 shares of stock issued to him by the board, for a portion of his interest in said road, by virtue of his purchase at a sale at public auction, made by the governor of the State, by authority of the act of the 12th of February, 1849; that said 1494 shares of stock had been sold on execution against the company, and

that Robert Parkinson became the purchaser; that Parkinson had transferred one half of this stock to Joseph Devin, and th remainder to James H. Northcott; that these shares of stock were those voted on at the election on the said sixth of June. Pickering offered in evidence the certificate of the Secretary of State, showing that a certificate or entry was made in the books of his office, declaring that the State was entitled to $5259\frac{7}{50}$ shares of fifty dollars each in the capital stock of said company; also, a certificate or declaration from the Governor of the State, that Pickering had become the purchaser of the right of way, embankments, &c., owned by the State in said railroad, for a sum specified, on the payment of which sum, he would be entitled to the legal evidences of his purchase; also, a conveyance from the Governor in conformity to the above certificate; also, a certificate for $5259\frac{7}{50}$ shares of stock issued to the State by said company, and assigned by the Governor to Pickering; also, a copy of the vote offered by him on the said sixth day of June, for certain persons therein named as directors, on the said 5259 shares of stock, which was rejected and the rejection thereof was written on the back of the vote and signed by the three judges or directors of the election; also, that Pickering offered to vote on 3756 shares of stock, which vote was rejected, and that the judges of the election refused to allow Pickering to vote at that election; that Pickering exhibited to the judges of the election all the evidences of his right and title to the stock, as hereinbefore recited, at the time he offered his vote.

BEECHER and UNDERWOOD, Attorneys for Appellant.

OLNEY, for Defendants in Error.

CATON, J. Although many of the irregularities urged against the election of the defendants, we consider well taken, we shall principally confine ourselves to the refusal to allow the relator to vote on the stock which he had purchased from the State and still held. We shall not enter upon a review of the laws which authorized the Governor to sell this stock, and under which the relator purchased it. This point was conceded in the very election under which the defendants claim to hold their offices, for by far the greatest number of votes which they received was upon this very stock, and the only ground upon which the objection was placed to allowing the relator to vote upon the balance of that stock which had not been sold on the execution against the company, was, that its transfer did not appear upon the stockbooks of the company. This brings us to the simple question whether that objection was a valid one. In pursuance of law

and by order of the board of directors, there had been issued, to the State, a certificate of stock for $5259\frac{7}{60}$ shares. In pursuance of law, all of the interest of the State in the road was sold by the Governor, and a formal conveyance made to the purchaser, and an assignment of the certificate of stock was made on the back thereof by the Governor. This vested in the purchaser all the rights of the State to the stock, both legal and equitable, unless some statute of the State, or by-law of the company, prescribed some other mode of conveyance, or some additional formality. It may well be conceded that the company had the right to provide by by-law that stock in the company should only be transferred upon transfer-books kept for that purpose, and even requiring the old certificates of stock to be surrendered and canceled, and new certificates issued to the assignee; but the evidence does not show, nor was there any pretence upon the argument, that any such by-law, resolution or order had ever been passed, either by the stockholders or board of directors. In the absence of such regulation, any mode or form of conveyance, sufficient in law to transfer the title to any other property or chose in action which by law is transferable, must be held sufficient to vest the legal title in the assignee, and entitle him to all the rights and benefits accruing to the legal owner of the stock, as much as if it had been transferred on the stock-books of the company, had there existed a by-law requiring such a mode of transfer.

Was then the relator entitled to vote, at the election in question, upon the stock which he had purchased of the State and then held? To this question but one answer can be given.

He not only shows to us, upon this record, that the stock had been regularly transferred to him, but he laid before the judges or directors of the election the evidences of such transfer, the same which we now have before us. Upon this evidence of his right, he offered to vote the 5259 shares for a set of directors other than the defendants, but the vote was refused. He then offered to vote 3765 shares, which were left him after deducting the 1494 shares which had been sold on the execution against the company, and which had already been voted for the defendants by the assignee of the purchaser at the sheriff's sale. This vote was also rejected, and the defendants declared duly elected. Had this latter vote been received, it would have decided the question at once against the defendants, and would have elected the candidates for which the relator offered to vote. Here was a manifest and gross violation of the rights of the relator, who owned more than two-thirds of the stock of the company, and yet who was allowed no voice in the election of the directors who were to manage its concerns; but a set of directors were

The People ex rel. Pickering *v.* Devin et al.

thrust upon him, whose whole previous conduct, so far as this record shows, was hostile to his interests, and in whom he well might feel a want of confidence. Nor was he deprived of his rights in pursuance of any by-law which he, or those who had formerly owned the stock which he then held, had ever consented to. Had the owners of this stock, or their representatives in the board of directors, adopted a regulation requiring any different evidence of the transfer of the stock than that which was presented, the case would have been different. But there is no pretence that such was the case. The persons having charge of the election, and who in no way represented the stock or stockholders, for the purpose of making rules concerning the mode of transfer, arbitrarily disfranchised the relator's stock, and treated him as an utter stranger. And in this, too, they were guilty of the grossest inconsistency, by allowing the vote on 1494 shares of stock for the defendants, of which there was no sort of transfer by the State, except the one under which the relator claimed the right to vote.

That the transfer by the sheriff, to the purchaser at his sale, was made in a mode more conformable to their notions of propriety, could not help the case, for, in tracing back the title to this stock, reliance was necessarily had upon the transfer from the State to the relator, for through that alone could any claim of right to the stock be asserted. If, then, the relator's title was bad, the title of those claiming through him, under the same transfer, was necessarily defective also. But these inconsistencies are of little moment, except as showing the arbitrary manner in which the relator's rights were treated; for, although the vote admitted on the 1494 shares may have been illegally admitted, they still got some other votes which secured the defendants' election, if the vote of the relator was properly rejected. But we have no sort of doubt that he had a right to vote his stock and secure the election of those for whom he offered to vote, holding as he did a majority of all the stock offering to vote.

The election of the defendants was clearly illegal, and in manifest violation of the rights of the relator, and a judgment of ouster should have been entered by the Circuit Court, whose judgment must be reversed, and the proper judgment of ouster entered here.

*Judgment reversed.*