## BATES–FARLEY SAVINGS BANK v. DISMUKES.

1. Where by the terms of a contract between a building and loan association and its stockholders a stockholder had the right, upon giving sixty days notice, to withdraw his stock and to thereupon receive from the association its withdrawal value, the rule for determining which was prescribed in the contract printed upon each stock certificate, and a stockholder in the association transferred, or endorsed, his stock certificate to the association "for withdrawal," after which a banking company obtained from the association such certificate and upon it collected from the

association the withdrawal value of the stock which the certificate represented, the owner of the certificate had the right to recover from the banking company the amount so collected in an action for money had and received.

2. In such an action, it was not essential that any privity of contract between the plaintiff and defendant should have been shown. If the plaintiff's right to the money received by the defendant was established, and the defendant was shown to have received it under such circumstances that it ought not to have retained it, the law implied a promise to pay it to the party who ought to have had it.

3. Although, under the circumstances stated in the first headnote, the payment by the building and loan association of the withdrawal value of the stock to the banking company would not relieve the association of its liability to the owner of the stock certificate, such owner was not confined to his remedy against the association. If he saw fit, he could ratify the unauthorized collection by the banking company and the unauthorized payment by the association, and recover the amount of such payment from the banking company.

4. Except as against the claims of the corporation, a transfer of stock does not require a transfer on the books of the company.

Argued December 15, 1898. — Decided April 20, 1899.

Action for money had and received. Before Judge Lumpkin. Fulton superior court. March term, 1898.

*C. J. Haden, L. A. Dean* and *J. L. Travis*, for plaintiff in error. *Hoke Smith & H. C. Peeples*, contra.

Fish, J. 1. According to the allegations of the petition, Dismukes and certain other persons named therein were the respective owners of certain certificates issued by the Southern Mutual Building & Loan Association, representing stock in this corporation. Upon each of these stock certificates there was printed the contract between the association and the stockholder. This contract contained the following stipulation or agreement: "At any time after one year and before two years, the certificate may be returned and a member will be entitled to receive, for each share, the money paid into the loan fund. Any time after two years, and before maturity of stock, a member will be entitled to withdraw his stock, and receive the amount paid into the loan fund, and not less than six per cent. interest for the average time. . . A member desiring to withdraw his shares must give the association sixty days notice of such withdrawal." Each of the stockholders in question,

desiring to receive the withdrawal value of the stock, endorsed, or transferred, the certificate representing the stock to the building and loan association, "for withdrawal." Subsequently the Bates-Farley Savings Bank obtained possession of these certificates from the building and loan association, some of them being transferred to the bank in writing. Then upon each of these certificates the bank collected from the building and loan association the withdrawal value of the stock which the certificate represented, returning the certificate, with (in every instance save one) its own endorsement in blank thereon to the association, which thereupon marked the certificate "withdrawn." After this had occurred, Dismukes became the owner, by written assignments, of the separate rights of the other stockholders under their respective certificates and their respective rights against the bank, and then brought this suit against the bank for money had and received. The defendant demurred to his petition, upon various grounds. The court overruled the demurrer, and the defendant excepted.

The demurrer not only expressly admits, but urges as a reason for the alleged non-liability of the defendant to the plaintiff, that the certificates "being endorsed to said association 'for withdrawal' only, there could be no transfer to the defendant thereof by said association." This is true. The endorsement, or transfer, to the association of each of these certificates was limited or qualified by the words " for withdrawal," which clearly showed the purpose for which the certificate was endorsed to the association, that purpose being, not to convey title to the stock of the association, but to formally return, or surrender, the certificate to the association, in order that the owner of the stock might receive from the association its withdrawal value. The terms of the endorsement, taken in connection with the contract between the building and loan association and the stockholders, which was printed on the certificate, were such as to put the bank upon notice of the purpose for which the stockholder owning the certificate transferred it to the association which issued it. It being admitted that the building and loan association had no power to transfer these certificates to the bank, then the right to the certificates and whatever they

represented never passed to the bank, and it collected the withdrawal value of the stock which the certificates represented, without authority.

It is further urged in the demurrer, with reference to each of the certificates, that the owner thereof "having transferred said certificate and said shares, 'for withdrawal,' to said building and loan association, the same being the corporation issuing said shares, and being the association owing the withdrawal value thereof, said shares became extinct or permanently withdrawn, and the same could not be transferred to this defendant by said association, and this defendant can not be made responsible to the plaintiff for any transaction with reference to said shares had between said association and this defendant." We do not think that the mere transfer of the certificate to the association "for withdrawal" extinguished the stock. The stock would nevertheless continue in existence until it was actually withdrawn. Until the expiration of sixty days from the notice of withdrawal, the owner of the stock, represented by the certificate which had been endorsed to the corporation "for withdrawal," would still be a stockholder in the corporation, and could, before the notice of withdrawal had matured, waive his right to withdraw and resume all the rights and liabilities of a member of the association. Thompson on Building Associations, p. 278; Thornton & Blackledge on Building and Loan Associations, §§ 316, 320. Whether after the expiration of the sixty days, if he had not in the meantime cancelled his notice of withdrawal, or waived his right to withdraw, he would, with reference to other members, cease to be a member of the association and become simply its creditor to the extent of the withdrawal value of his stock, as some authorities hold (Thomp. Build. Asso. § 146, pp. 281, 282; Thornt. & Blackl. B. & L. Asso. § 320), it is unnecessary to determine in this case. For, whatever his status, until he was paid the withdrawal value of his stock, the stock certificate, which contained the contract between himself and the association and defined his rights as against it, would still be his property. So, in the view which we take of the case, it does not matter whether each of these certificates, at the time the bank obtained possession of it and ap-

propriated it to its own use, represented stock in the association, or the claim of a creditor against the association for the withdrawal value of the stock.    The certificate, and whatever right in reference to the association it represented, was still the property of the stockholder who had endorsed it to the association "for withdrawal."    With reference to each of these certificates, the petition alleges that the defendant collected a certain amount of money from the association *on* the certificate. That is, the defendant took a stock certificate belonging to another, and, assuming to be the owner thereof, collected upon it money which was legally due to the true owner.    Having done so, it can not escape liability to the owner of the certificate by pleading that it never had any title to the certificate.    The fact that the defendant took another's property and unlawfully converted such property to defendant's own use renders defendant liable to the owner for whatever money defendant received as the result of such conversion.

Nor can defendant escape such liability by pleading that the stock which the certificate represented was extinct.    The certificate, containing the contract between the stockholder and the building and loan association, under the terms of which contract he was entitled, upon giving the required notice, to demand and receive from the association the withdrawal value of his stock, was alive as a certificate or contract for whatever it was worth; and it appears to have been worth a good deal to the defendant, for upon it the defendant collected the withdrawal value of the stock from the association.    Having converted a certificate, or written contract, belonging to another to its own use and collected the value or proceeds thereof from the building and loan association, defendant is, at the election of the real owner or one to whom he has assigned his rights, liable to him for the amount so collected, as for money had and received to his use.    It is true that the money which was paid by the building and loan association to the defendant was, while in the hands of the building and loan association, a part of the funds of such association, and was not the money of the owner of the certificate upon which it was paid to the bank; but when the association separated this money from its other

funds and paid it to the defendant as a settlement of the indebt-
edness represented by such certificate, it became, in equity and
good conscience, money paid to the use of the owner of the
certificate by virtue of which it was received, if he saw fit to
ratify such unlawful payment by demanding the money from
the one to whom it was paid. The demand, or debt, against
the association was his, and whoever, with notice of this fact,
without his authority, collected the amount thereof from his
debtor could be treated by him as having collected the money
for his use. An action for money had and received "lies in all
cases where money is in the hands of another, which, ex æquo
et bono, the plaintiff is entitled to recover, and which the de-
fendant is not entitled in *conscience* to retain." *Whitehead* v.
*Peck*, 1 *Kelly*, 140; 4 Wait's Ac. & Def. 469, and numerous
cases there cited.

2. The demurrer urged want of privity between the plaintiff
and the defendant. "It is not . . essential that any privity
of contract should be shown; if the plaintiff's right to the
money is established, and the defendant is shown to have re-
ceived it under such circumstances that he ought not to retain
it, the law implies a promise to pay it to the party who ought
to have it." 4 Wait's Ac. & Def. 469; Calais *v.* Whidden, 64
Me. 249; Mason *v.* White, 17 Mass. 563; Eagle Bank *v.* Smith,
5 Conn. 71; Colgrove *v.* Fillmore, 1 Aik. (Vt.) 357. If one
sell the property of another without authority, the owner may
waive the tort and sue him for the money. *Merchants' Bank*
v. *Rawls*, 7 *Ga.* 191. As said by Nisbet, J., in *Culbreath* v.
*Culbreath*, 7 *Ga.* 68, in reference to this form of action, "It is
*not* founded upon the idea of a *contract*. In answer to the ob-
jection, that assumpsit would lie only upon a contract, express
or implied, Lord Mansfield said [in Moses *v.* McFarlan, 2 Burr.
1005], 'If the defendant be under *an obligation*, from the ties
of *natural justice*, to refund, the law implies a *debt*, and gives
this action, founded in the *equity of the plaintiff's case*, as if it
were upon contract.'" There is no privity of contract between
the owner of property and the thief who steals it; and yet
where one steals the money of another, the latter may recover
a judgment against him for the amount stolen, in an action for

money had and received.   Howe *v.* Clancy, 83 Me. 130.   So
where one feloniously takes the goods of another and sells and
converts them into money, this form of action will lie against
the wrong-doer, for the proceeds of the property stolen.   Bos-
ton & Worcester R. R. Corp. *v.* Dana, 1 Gray, 83.

3. One ground of the demurrer was, that "plaintiff's rights
have [not] been in any way interfered with or lessened as be-
tween the plaintiff and said building and loan association."
True, the plaintiff could have held the building and loan asso-
ciation responsible for the withdrawal value of the stock, be-
cause its payment of such withdrawal value, without the con-
sent of the owner of the stock, to the defendant, who was in law
a mere interloper, did not discharge it from its liability to such
owner.   But he was not bound to proceed against the associa-
tion.   He could elect between remedies and choose between
debtors.   If one sell the personal property of another and con-
vert it into money, the owner of the property may either pur-
sue the property and recover it from the purchaser, or he may
waive the tort and, in an action for money had and received,
recover the amount received for the property from the person
who unlawfully disposed of it.   The building and loan associa-
tion having paid to the banking company money to which the
plaintiff and his assignors were respectively entitled, on claims
against the association which they respectively owned, the
plaintiff could sue the building and loan association as his
debtor, disregarding the unauthorized payment to the banking
company, or he could ratify such payment and recover the
amount thereof from the banking company.   Fowler *v.* Bow-
ery Savings Bank, 113 N. Y. 450, s. c. 10 Am. St. Rep. 479;
Riley *v.* Albany Savings Bank, 36 Hun, 513, affirmed in 103
N. Y. 669.   He chose the latter alternative; he saw fit to ratify
the unauthorized collection by the defendant and the unau-
thorized payment by the association; and it does not now lie in
the mouth of the defendant to say, when called upon to pay
over to him the money which it unlawfully collected upon his
and his assignors' claims against the building and loan associa-
tion, that his only remedy is against the association.   The de-
fendant voluntarily, with knowledge of the fact that the title to

each certificate, or contract, upon which it collected the withdrawal value thereof, was still in the stockholder who had endorsed it to the building and loan association "for withdrawal" only, stepped into the shoes of such stockholder, and, in his stead, upon such certificate, received the money which was due him. If such stockholder, then, or one to whom he has transferred his rights in the premises, sees fit to adopt and ratify its unauthorized act in making the collection, it will not be heard to say: "Although I had no right to take the written evidence of your claim against the building and loan association and upon it collect from the association the amount that it was due you, I am not responsible to you for the amount which I so received, because the payment to me by the association did not relieve it of its liability to you." Under such circumstances, the law implies a promise on the part of the defendant to pay the money over to the one who was entitled to receive it. We are clearly of opinion that, under the facts alleged in the petition, the plaintiff's action for money had and received is maintainable.

4. The petition alleges that R. E. Kuhn was the original owner of one of the certificates and the shares of stock which it represented, that he transferred it to Bettina Kuhn, who endorsed it to the building and loan association, "for withdrawal"; that after the defendant had received from the association, on this certificate, the amount of money named in the petition, Bettina Kuhn transferred her rights under the certificate and her rights against the defendant to the plaintiff. One ground of the demurrer was, that, as to this certificate, "no transfer is alleged to have been entered on the books of the association at the home office, conveying said shares from said Kuhn to the plaintiff, as provided in the certificate. That Bettina Kuhn was not a member of said association, so as to entitle her to withdraw the value of the shares represented by said certificate." There was no merit in this ground. The transferrer of the stock certificate could not himself impeach his unregistered transferee's title. 1 Cook on Stock and Stockholders, § 378. As between the transferrer and the transferee, the unregistered assignment is complete and effectual, even though

the certificate, or the charter of the corporation itself, may declare that a transfer shall not be legal or complete until it is registered on the corporate books. Ib. 379. Except as against the claims of the corporation, a transfer of stock does not require a transfer on the books of the company. Civil Code, §1855; *Southwestern R. R.* v. *Thompson*, 40 *Ga.* 411. The corporation which issued this stock did not question Bettina Kuhn's right to claim its withdrawal value, for it accepted a transfer of the certificate from her, "for withdrawal." It was under color of the limited transfer which it thus received from her that it subsequently attempted to transfer the certificate to the defendant. The defendant received this certificate from the association, after it had been endorsed to the association by Bettina Kuhn, and whatever semblance of a claim to the stock, or its withdrawal value, it had it derived, through the association, from her. It is apparent, therefore, that it is in no position to contend that she was not a stockholder in the association at the time she endorsed the certificate which she held to the association "for withdrawal."

The demurrer was properly overruled by the court.

*Judgment affirmed. All the Justices concurring.*