## SYLVANIA & GIRARD RAILROAD CO. *v.* HOGE *et al.*

1. The general railroad incorporation act (Civil Code, § 2163) gives the management of the affairs of the corporation to a board of directors of not less than five and not more than fifteen members. The act further provides for the annual election of directors. Where stockholders attend a regular annual meeting of stockholders, they may transact the business of that meeting, and elect officers, although a majority in interest or in number of the stockholders are not present. If at any such meeting they fail or refuse to elect directors, any stockholder may by mandamus compel the corporation and the directors holding over to call a meeting for the purpose of electing a board of directors.

2. A shareholder is not prevented from exercising his right as such because another may be beneficially interested in the ownership of the stock.

3. A sale of stock, by one who is a party to a pooling agreement, to some of the other stockholders, in violation of its terms, does not justify the corporation of its own motion, for that reason alone, to refuse to recognize the validity of such transfer.

4. Where neither the charter nor any statute or by-law of the corporation requires that stock be transferred on the books of the company, or the surrender of the certificate and the issuance of a new certificate to the assignee, any mode or form of conveyance sufficient in law to transfer the absolute title to the assignee entitles such assignee to all the rights and benefits accruing to the assignor, just as if the certificate of shares stood in the assignee's name.

5. A shareholder who designedly absents himself from a stockholders' meeting surrenders no right appertaining to the ownership of his stock, except the right to participate in the meeting which he refuses to attend.

6. Where stockholders have failed to hold a regular annual stockholders' meeting and elect directors, a meeting of the old board of directors on the day when the stockholders should have acted, in which they resolve to hold over until their successors are elected, is not in effect a re-election of them by the stockholders for another term.

7. Where the directors are reduced by death below the minimum number prescribed by the charter, and there is no provision in the charter or by-laws for filling the vacancy by the directors, the stockholders may supply the vacancy.

Argued November 4,—Decided December 19, 1907.

Mandamus. Before Judge Rawlings. Screven superior court. May 18, 1907.

S. C. Hoge, L. H. Hilton, W. P. Williams, E. H. Hill Jr., G. M. Hill, J. A. Mills, and J. R. Wells applied for a writ of mandamus to compel the Sylvania & Girard Railroad Company, and three of its directors, J. J. B. Morel, P. A. Mock, and J. W. Overstreet, to cause a meeting of the stockholders of the corporation to be held for the purpose of electing a board of directors. Applicants alleged in their petition, that they were stockholders of the railroad company; that the capital stock of the corporation was ten thousand dollars, divided into one hundred shares of the par value of $100 each; that the Sylvania & Girard Railroad Company was organized on the 16th day of November, 1906, at a meeting of the stockholders of the company, held at its principal office in Sylvania. At this meeting L. H. Hilton, H. C. Perkins, J. J. B. Morel, P. A. Mock, and J. W. Overstreet were elected directors of the corporation. The stockholders present at this meeting represented 88 shares of the capital stock of the company, and the following resolutions were adopted: "Resolved 1st: That the annual meeting of the stockholders of this company shall be held on the first Wednesday in January of each year. Resolved 2d: That a meeting of the stockholders be called to be held on the first Wednesday in January, 1907, at twelve, noon, at the office of the company in Sylvania, Georgia. Resolved 3rd: That the committee appointed to draft by-laws make their report at that time. Resolved 4th: That the present board of directors hold over until the said annual meeting to be held on the first Wednesday in January, 1907, at which time an election shall be held to elect directors for the next year." On the first Wednesday in January, 1907, a minority of the stockholders met pursuant to the foregoing resolutions, but failed to elect a board of directors. The old board of directors, with the exception of H. C. Perkins, who departed this life after his election and before the meeting of the stockholders on the first Wednesday in January, 1907, continued to hold over and exercise the duties of the

office of directors. Applicant S. C. Hoge is now the owner of 25 shares of stock formerly owned by H. C. Perkins. On April 11, 1907, applicants addressed ·a communication in writing to the four surviving directors, requesting that a meeting of the stock-holders be called for the purpose of electing a board of directors. The board of directors refused to comply with this request, and still refuse to call a meeting of the stockholders to elect their successors. The charter of the company requires a board of five directors. to manage its affairs, and since the death of H. C. Perkins this board is not constituted as required by law, and has no power to elect a successor to the deceased director. The prayer is that the directors Morel, Mock, and Overstreet be required to call a meeting of the stockholders for the purpose of electing a board of directors.

In response to the mandamus nisi the defendants appeared and demurred to the sufficiency of the petition as affording ground for the relief prayed. They also filed an answer in which it was charged, on belief, that though the 25 shares alleged to be owned by Hoge stood in his name, he held them for L. H. Hilton, and he was not a real and bona fide stockholder. They denied that Mills was the lawful owner of the five shares which he claimed to own, on account of the following facts: That they were originally issued to his brother-in-law, J. A. Enneis, ·and were sold by Enneis to Hilton in violation of his agreement hereinafter set out, and in some way transferred to Mills, but not on the books of the company. The corporation through its president, Morel, refused to make the transfer, and these five shares stand on the books of the company in the name of Enneis. Defendants believe that they are held by Mills for the benefit of Hilton, but do not recognize either Mills or Hilton as the owner of these five shares. When Mills was endeavoring to purchase these shares from Enneis, he was informed by the latter that he could not sell his stock to him, and was in honor bound to keep it in pursuance of the agreement hereinafter set forth, of which Mills, Enneis, and Hilton were advised. It was admitted that the other applicants were stockholders as alleged. It was further averred that the railroad company was incorporated under the general law by the secretary of State, on October 18, 1905, and subsequently leased the railroad running from Rocky Ford to Sylvania, known as the Sylvania Central Railroad, for ten years, with the privilege of renewal for a like term; that this

was the only road running into Sylvania; that the citizens of Sylvania were willing to get the charter for the Sylvania & Girard Railroad Company, either to build or control a railroad running into Sylvania, provided L. H. Hilton should be kept out of the control of the company. At one time when the publication for a charter was running, the publication was stopped because of the apprehension as to Hilton's control. Subsequently, and before the granting of the charter, there was a meeting to compromise and adjust matters at Sylvania, and at this meeting Hilton stated that he would offer a resolution giving to J. J. B. Morel and his friends, if they would go into the enterprise, one half of the capital stock, and that he and his friends would take the other half, and that Morel and his friends should have the right to name three out of five of the directors, and thus exercise a control. It was known by Hilton and all present that Morel and his friends would not go into the enterprise but for the understanding embodied in such a resolution, and but for this understanding the enterprise would not go through. According to this understanding a meeting of the citizens was held and took the following action, as embodied in the minutes of the meeting: "Office of Screven County Bank. Meeting of citizens of Sylvania held for the purpose of considering the proposition to lease the Sylvania Central Railroad. Present: G. M. Overstreet, P. A. Mock, J. W. Newman, J. A. Enneis, H. C. Perkins, L. H. Hilton, H. B. Mills, J. W. Overstreet. G. M. Overstreet was elected president of the meeting and J. W. Overstreet secretary. On motion of L. H. Hilton, it was decided to readvertise for charter of the Sylvania & Girard Railroad Company. Resolved that Mr. H. C. Perkins be allowed to subscribe $2,500 to the capital stock of $10,000, and Mr. L. H. Hilton and his friends be permitted to subscribe $2,500 to said capital stock, and the remaining to be subscribed by J. J. B. Morel, G. M. Overstreet, and such of their friends as they may select or designate. Resolved further that three directors be selected from the last apportionment of $5,000 and two be selected from the first apportionment of $5,000, all of the subscribers to be residents of this community, except Mr. Perkins, who has business interests here. Mr. L. H. Hilton, Mr. J. J. B. Morel, Mr. H. C. Perkins, P. A. Mock, and J. W. Overstreet were proposed as board of directors to be notified after the charter is obtained." The answer further alleges that

"after the charter was obtained, these minutes were read and ratified, and at this last-mentioned meeting the directors were elected. J. J. B. Morel, P. A. Mock, and J. W. Overstreet were the three directors representing Mr. Morel and his friends. The stock was subsequently apportioned as follows: J. J. B. Morel, 14 shares; P. A. Mock, 12 shares; H. S. White, 7 shares; G. M. Overstreet, 7 shares; J. A. Enneis, 5 shares; J. W. Overstreet, 5 shares; H. C. Perkins, 25 shares; L. H. Hilton, 17 shares; G. M. Hill, 3 shares; E. H. Hill Jr., 2 shares; W. P. Williams, 2 shares; R. W. Wells, 1 share. The first six mentioned constitute what may be called the Morel party, or interest. It was distinctly agreed among the six stockholders representing the Morel party or interest that they would not sell outside of their friends, and J. A. Enneis was a party to this agreement, and in selling out to the Hilton interest he violated the agreement. It was thoroughly understood by the incorporations that the balance and control with the Morel party was to be permanent, and, but for this, the charter would not have been obtained or accepted." At the meeting of the stockholders on November 16, 1906, a committee was appointed to draft a set of by-laws for the company, with direction to report at the meeting to be held on the first Wednesday in January, 1907. At the meeting of the stockholders on the first Wednesday in January, 1907, no election of directors was had, because only a minority of the stock was represented. The meeting was not held, because, although thoroughly aware of the meeting and its purpose, the plaintiffs Hilton, E. H. Hill Jr., and G. M. Hill, though present in Sylvania, and their attendance urged, designedly and purposely absented themselves from the meeting to prevent the presence of a majority of the stock. S. C. Hoge was not a stockholder at this time, and Hilton then held a transfer of the five shares of the Enneis stock, although it had not been recognized by the president or entered on the books of the company, and since this meeting Hilton has in some way put these five shares in the name of Mills. At this meeting of the stockholders on the first Wednesday in January, 1907, there were present P. A. Mock, J. W. Overstreet, J. J. B. Morel, W. P. Williams, and G. M. Overstreet, who together held forty-seven shares. At that time the directors held a meeting and adopted a resolution to the effect that they would hold over until the next regular meeting of the stockholders in the following Jan-

uary, unless a meeting was called before that time by the president or a majority of the directors. It was averred that there was no objection to the resolution by anybody, and therefore it represented the unanimous action of the minority stockholders at the meeting, although it was adopted technically at a directors' meeting. It was admitted that a request had been made to call a meeting of the stockholders, and declined by the directors. No by-laws have been adopted by the corporation, although they would have been adopted at the last regular meeting of the stockholders if applicants had not absented themselves; and as no provision is yet made for the filling of vacanies, respondents contend that the four directors hold over and constitute a lawful organization. It was averred that the corporation was well managed, and in the first year of its existence declared a dividend of 125 per cent., which had been paid, and also had earned an additional dividend of 50 per cent., which had been declared, but had not been paid because one of the applicants, Williams, who is the treasurer of the company and also cashier of a bank which Hilton controls, has refused to pay the same. For these reasons it was contended that the plaintiffs were not entitled to the writ of mandamus as prayed.

The case was heard by the judge on the petition, demurrer, and answer; and the mandamus nisi was made absolute. Respondents excepted to the granting of the mandamus absolute, and assign error thereon, for that the petition for mandamus did not set forth any reason for the issuance of the writ, and that the matters therein alleged constitute no basis for the relief prayed; that the judgment granting the mandamus absolute is contrary to law and unauthorized by the evidence; that the answer was uncontradicted, and the facts therein alleged demanded a finding in favor of the respondents and against the petition for the rule absolute; but that if any issue of fact was involved, such issue was triable at the next term of the superior court of Screven county as other jury cases are tried, and the judge erred in determining the same.

*E. K. Overstreet, J. W. Overstreet,* and *Adams & Adams,* for plaintiffs in error. *Joseph H. Hall* and *Warren Roberts,* contra.

EVANS, P. J. (After stating the facts.)

1. The petition presents the case of stockholders seeking to compel a corporation and a majority of its directors to call a meeting of the stockholders for the purpose of electing a board of di-

rectors, after a failure to elect at the last annual meeting. The corporation was chartered under the general railroad law, which provides that a regular election for directors shall be annually held at the principal office of the company. Civil Code, §2163. The corporation had duly organized agreeably to law, and adopted a resolution providing that the annual meeting of the stockholders should be held on the first Wednesday in January, 1907. The statute imposes the duty on the corporation to hold annual meetings, but fixes no time when they shall be held. As the statute prescribed no fixed time for holding the annual meeting, it was competent for the stockholders to fix the date of such meeting. When so fixed, it became the statutory duty of the corporation to hold the annual meeting at the time thus appointed. At the annual meeting in January, 1907, a minority of the stockholders assembled, but did not resolve themselves into a stockholders' meeting. It was within the power of the minority of the stockholders at the annual meeting to have elected a board of directors. "The law is clear that those stockholders who attend a duly called stockholders' meeting may transact the business at that meeting, although a majority in interest or in number of stockholders are not present." 1 Cook on Stock and Stockholders, §607. The Civil Code, §2193, requires a representation of a majority of the stock only at the meeting for organization, and there is nothing in the section to change the general rule as stated by Mr. Cook. For some reason, presumably because they were not informed that it was in their power to legally elect a board of directors, no action was taken at the January meeting. The term of the old board of directors expired at this time, and it was the duty of the stockholders to have elected their successors. As no election was held, any stockholder could by mandamus compel the calling of a meeting for the purpose of complying with the statutory duty. Accordingly, the petition was not open to demurrer because it failed to allege facts entitling the plaintiffs to the remedy of mandamus.

2, 3, 4. We will next inquire as to whether the answer raised any disputed issue of fact. At common law the return to the writ of mandamus was not traversable, and the court determined whether the writ should issue upon the matters set up in the return. By the statute of 4 Anne the return was made traversable, and this was the condition of the common law at the time of our

adopting statute. *Johnson* v. *State,* 1 *Ga.* 273. The common-law practice, however, has been modified by our statute, which provides that if the answer makes an issue of fact, the petition and answer shall be returned to the next term of the superior court, and the issue thus made tried by a jury. Civil Code, §4872. The petition alleges that all the applicants were stockholders of the railroad corporation. The answer undertakes to join issue as to the ownership of stock in the corporation by two of the applicants. It is admitted that the stock which formerly belonged to H. C. Perkins now stands in the name of the plaintiff S. C. Hoge, but it is. charged on belief that the holding of Hoge is really for the benefit of L. H. Hilton. If the certificate of the shares stands in the name of Hoge, we are at a loss to see why he is any the less a stockholder because Hilton may have an interest in his holding, and particularly so when Hilton is a party plaintiff in the petition. The stock which the plaintiff Mills claims to own was issued to J. A. Enneis, and Mills is his transferee. Mills applied to the proper officer of the corporation to have the transfer from Enneis to himself entered upon the books of the corporation, which was refused. It is contended that the transfer of the stock by Enneis to Mills was in violation of a pooling agreement entered into between the stockholders, whereby Enneis agreed that he would not sell or transfer his stock to any one unfriendly to the Morel interest, and that the transfer to Mills, who is friendly to Hilton, was in violation of this agreement. Any such private agreement or understanding between the individuals holding the legal title to the stock in due form, and others, is a matter between themselves, with which the corporation has no concern. Ex parte Willcocks, 7 Cowen, 402 (17 Am. D. 525) ; In re Long Island R. Co., 19 Wend. 37 (32 Am. D. 429). It is no excuse for the corporation to refuse to issue stock to Enneis's assignee, or to refuse to recognize such assignee as a stockholder, that Enneis may have violated his pooling agreement with certain other stockholders, with the knowledge of his assignee. Where the charter of a corporation provides that shares of stock can only be transferred on the corporate books, the transfer must be made in the way pointed out in the charter, before the transferee would become a shareholder so as to be entitled to participate in the internal affairs of the corporation. *Witham* v. *Cohen,* 100 *Ga.* 674 (28 S. E. 505).

The general railroad law under which this corporation was chartered makes no provision as to the manner in which transfers of stock shall be made. It is also within the power of a corporation to adopt by-laws providing how transfers of stock shall be made; and if a by-law be adopted requiring all transfers of stock to be entered upon the books of the corporation, it would be necessary that this requirement be complied with before the transferee of a shareholder could participate as a shareholder in a stockholders' meeting. This corporation was duly organized. With the exception of the resolutions adopted at the organization meeting, and which appear in the statement of facts, no by-laws were adopted by the corporation. The defendant corporation therefore has neither charter nor by-law which requires a transfer of stock on the books. Our code declares, that, "except as against the claims of the corporation, a transfer of stock does not require a transfer on the books of the company." Civil Code, § 1855. This section was codified from the decision in *Southwestern R. Co.* v. *Thomason,* 40 *Ga.* 408, and its meaning is clear in connection with its context in the decision. On page 411 McCay, J., said: "The transfer upon the books of the company is only for the protection of the company; it may have liens upon the stock, or *it may require this mode* in order that its own management may be complete and within its grasp." The section does not mean that an assignee of stock is not a stockholder of the corporation for lack of a book transfer, when neither charter nor by-law required this mode of transfer. See *Buena Vista Bank* v. *Grier,* 114 *Ga.* 400 (40 S. E. 284); *Bates-Farley Savings Bank* v. *Dismukes,* 107 *Ga.* 212 (33 S. E. 175). Where neither the charter, the statute, nor corporate by-law requires a book transfer, the assignee of a certificate of stock may vote thereon, although the stock stands on the books of the company in the name of the assignor. 1 Cook on Stock and Stockholders and Corporation Law, § 611; *Allen* v. *Hill,* 16 Cal. 113. In the absence of a regulation requiring a book transfer, or the surrender of the old certificate and the issuance of a new certificate to the assignee, any mode or form of conveyance sufficient in law to transfer the absolute title to the assignee entitles him to all the rights and benefits accruing to the legal owner of the stock, just as if the certificate of shares stands in the assignee's name. *People* v. *Devin,* 17 Ill. 84. The

transferee, Mills, therefore acquired from the shareholder, by the assignment, title to the stock, and was a stockholder. The facts set up in the answer were insufficient to raise an issue that he was not a stockholder.

5. The other matter set up in resistance to the issuance of the writ was the conduct of the applicants in purposely absenting themselves from the stockholders' meeting, in order to prevent an election of directors at that time. We have shown that the minority of the stockholders had the right at a regular annual meeting to elect a board of directors. We can not perceive any distinction between negligently omitting to attend a meeting of the stockholders, and staying away by design. The only forfeiture of right which the absent stockholder incurs is the surrender of his right to participate in the stockholders' meeting. It was the duty of the stockholders present at the annual meeting, even though their holdings were less than a majority of the stock, to have proceeded with the transaction of the proper business, which included the election of directors, and neither the old directors nor the corporation can insist upon the old board holding over another year because the stockholders failed to exercise a duty enjoined by law. The action of the minority stockholders would have been just as legal if these applicants had been there, and no estoppel arises against them from insisting that the corporation perform its duty under the law because they voluntarily absented themselves from the meeting.

6. It is further alleged that the directors, when they discovered that a majority of the stock was not represented at the stockholders' meeting, immediately held a directors' meeting and adopted a resolution declaring that they would hold over until their successors were legally elected, and that this was in effect action by them as stockholders. Not so. The pleadings of both sides are in complete harmony that the stockholders took no action as stockholders, and caused an entry to this effect to be made upon the minutes of the stockholders' meeting. The directors, in passing the resolution extending their terms, did not undertake to act as stockholders, but as directors. Indeed, the resolution that they should hold over until their successors were elected amounted to no more than an incident which the law attaches to the failure of the stockholders to elect their successors.

7. We have not adverted to the point made in the petition that under the law the railroad corporation must have not less than five nor more than fifteen directors, and that as one of the directors had died, the board was not legally constituted. The statute specifically provides that the corporation may provide by by-law for the filling of vacancies in the board of directors. Civil Code, §2163. The corporation by failing to elect did not forfeit its corporate existence. But the stockholders, in the absence of authority under a by-law, could have supplied the vacancy. In re Union Ins. Co., 22 Wend. 591. This proceeding is not to cause the election of a single director to fill a vacancy, but to compel corporate action looking to the election of a full board.

*Judgment affirmed. All the Justices concur.*