### 6391. GEORGIA LIFE INSURANCE COMPANY *v.* LASSETER.

Where a promissory note was given to a corporation for a part of the purchase-price of a certain number of shares of its capital stock, by the signer of a subscription containing the following stipulation: "As soon as this subscription is accepted by the company, a certificate for said stock shall be issued to me by the company, showing that the same is full paid and non-assessable," and, after the acceptance of the subscription and the execution of the note, such a certificate, reciting that it was issued to him, was prepared and signed by the proper officers of the corporation, and attached to the note and retained by the corporation, awaiting payment of the note, and there was no request for delivery of the certificate and no refusal to deliver it, the mere non-delivery of the certificate was not a valid defense to an action on the note.

DECIDED FEBRUARY 10, 1916.

Complaint; from city court of Greenville—Judge Revill. January 19, 1915.

The defendant pleaded that the consideration of the note sued on had failed because the note was for the balance of the purchase-price of two shares of stock in the plaintiff corporation, for which certificates were to be issued to him, and that the plaintiff did not issue or offer to issue and deliver such a certificate to him. On the trial the stock-subscription, the material part of which is set out in the decision, was introduced in evidence, together with the certificate for the two shares of stock. The subscription and the note were dated January 10, 1910, and the stock-certificate was dated January 26, 1911. The suit was filed on December 30, 1913. The plaintiff's secretary testified: "After the stock-certificate was issued, it was pinned on the note of D. L. Lasseter [the defendant], sued on, which was our custom, to keep the stock until the note was paid. The stock was never delivered to Lasseter, and was kept by us without the consent of Lasseter,—that is, without conferring with him, nothing being said by us to him, or by him to us, in regard to this transaction." The defendant testified, that the stock was sold to him by J. C. Cline, an agent of the plaintiff, to whom he made a cash payment and delivered the note; that his understanding was that the stock was to be mailed to him at once, and that "the certificate for two shares of stock was never delivered" to him. It was testified on the part of the plaintiff that Cline had no authority to bind the company "further than

the contract for the subscription which the subscriber signed at the time that the stock was subscribed for." The court directed a verdict for the defendant; and the plaintiff excepted to the direction of the verdict.

*N. F. Culpepper, Miller & Jones,* for plaintiff, cited: *Fulgam* v. *Macon & Brunswick R. Co.,* 44 *Ga.* 597; *South Ga. & Fla. R. Co.* v. *Ayres,* 56 *Ga.* 231 (2); Kansas Mutual Life Ins. Co. v. Coalson, 22 Tex. Civ. App. 64 (54 S. W. 388 (7), 392); Century Dict., "Issue."

*J. E. Justiss,* for defendant, cited: 23 Cyc. 358, title "Issue."

RUSSELL, C. J. The defendant subscribed for two shares of the capital stock of the plaintiff company at the price of $200 per share. He paid $100 in cash and gave his note for $300. The subscription signed by him stipulated that "as soon as this subscription is accepted by the company, a certificate for said stock shall be issued to me by the company, showing that the same is full paid and non-assessable." The subscription was accepted, and the stock-certificate was duly executed by the proper corporate officers, but it was never sent to the defendant by the company. The company brought suit on the note, and the trial judge directed a verdict for the defendant. The majority of the court are of the opinion that the word "issued," as used in the contract referred to, and from which an excerpt is quoted, does not include as an essential a *delivery* of the certificate of stock therein mentioned, and therefore that the trial judge erred in directing a verdict.

For myself, I think the execution of the note, and contemporaneously therewith the making of a contract to issue the stock to the subscriber, contradict the implication that the stock was to be held as collateral for the note, and compels the conclusion that it was the intention of the parties that each contract should be independent of and distinct from the other. Viewed in this light, the stipulation quoted, that a certificate of stock should be "issued" to the defendant, should be given the ordinary meaning of the words employed. Under its contract it was the duty of the company not only to formally execute the stock-certificate, but to deliver it to the purchaser. The agreement to issue the stock to the purchaser negatived any right on the part of the company to hold the certificate as collateral for the note, and the retention of the certificate deprived the maker of the note of one of the most val-

uable rights conferred by the ownership of the stock, to wit, the right to transfer his certificate and sell his stock, which of itself might have enabled him both to make a profit and to pay his note. In my view, the parties in this case made a contract by which the note was accepted in payment of the unpaid remainder of the purchase-price of the stock, and the certificates of stock were to be delivered for whatever purpose he might wish to use them. In the absence of the stipulation which is quoted above, it might be assumed that the corporation, for the purpose of securing the note, would hold the stock until payment of the note, or it might be assumed that they would issue two certificates of stock, one for each share; but it seems to me that any assumption at variance with the express terms in which the agreement of the parties is couched would be in effect to substitute for the contract made by the parties a different contract and one which they did not make.

This case differs altogether from that of *Prontaut* v. *Lorick*, ante, 495 (87 S. E. 716), in which attention is called to the fact that there was an agreement as to when the certificates of stock representing the shares were to be delivered. That case was, of course, governed by the general rule based upon the presumed intention of the parties that the stock would not be transferred or delivered until payment of the note; whereas in this case, as I see it, the certificate was to be issued to the purchaser by the company as soon as the subscription was accepted by the company, and without regard to the note. It is immaterial that the defendant did not call for the stock, for the contract did not require him to do so. The issuance of certificates of stock is not completed until this essential evidence of ownership is delivered to the stockholder. As applied to certificates of stock, "issue" means to send out, emit, deliver for use, put into circulation. Cunningham v. Royal Neighbors of America, 24 S. D. 489 (140 Am. St. R. 793); Century Dictionary; Webster's Unabridged Dictionary; American Bridge Company v. Wheeler, 35 Wash. 40; Scott v. Abbott, 160 Fed. 573, 577, and citations; Folks v. Yost, 54 Mo. App. 59. The rulings in *Fulgam* v. *Macon & Brunswick Railroad Co.*, 44 Ga. 597, and *Sylvania R. Co.* v. *Hoge*, 129 Ga. 734 (59 S. E. 806), are not in point as to the real question involved in this case, which is the proper construction of a particular contract in which the purchaser had the foresight to provide that a certificate should be issued to

him as soon as his subscription was accepted. Granting that under the rulings above cited the defendant would have been a stockholder without any such agreement, and that, in the absence of the stipulation under consideration, the corporation could have held the certificates as security for the balance of $300 he owed on the stock, there is the same difference between actual stock in a corporation and the certificate which evidences the ownership of such stock as there is between the actual possession of property and the possession of some symbol of ownership, except that in the case of shares of stock in a corporation the undivided intangible interest of the stockholder is represented in a marketable form only by his certificate of stock. The fact that the courts correctly held in the *Fulgam* and *Hoge* cases, supra, that it was no defense to a suit upon an ordinary subscription to stock that a certificate had not been issued does not outlaw a different contract by which a subscription to stock may be made conditioned on delivery of the stock-certificate "as soon as the subscription is accepted." Cases may be imagined in which the promoters of a corporation would be very glad to exchange a certificate of stock for the notes of certain persons which could be readily converted into cash, and so I think the learned trial judge correctly construed the contract now before us, and that his judgment should be affirmed. However, since the majority of the court hold that the trial judge erroneously directed the verdict herein, his judgment is

*Reversed. Russell, C. J., dissents.*