# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CHRISTOPHER J. TIGANI, as a vested )
beneficiary of and on behalf of the )
Irrevocable Trust for the benefit of )
Robert F. Tigani dated December 16, 1986 )
)
    Plaintiff, ) C.A. No. N19C-10-014 MMJ CCLD
        v. )
)
STEVEN R. DIRECTOR, Esq. )
STEPHEN B. BRAUERMAN, Esq. )
And BAYARD, P.A. )
)
    and )
)
W. DONALD SPARKS, II, Esq. and )
RICHARDS, LAYTON & FINGER, P.A. )
)
    Defendants. )

Submitted: July 6, 2020
Decided: September 2, 2020

On Defendant's Motion to Dismiss

## GRANTED

## OPINION

Christopher J. Tigani, *pro se on behalf of the Irrevocable Trust for the Benefit of Robert F. Tigani*

David E. Ross, Esq., (Argued) Holley E. Newell, Esq. Ross Aronstam & Mortiz LLP, Wilmington, Delaware, *Attorney for the Richards Defendants*

Kurt M. Heyman, Esq., (Argued) Melissa N. Donimirski, Esq., Heyman Enerio Gattuso & Hirzel LLP, Wilmington, Delaware, *Attorneys for the Bayard Defendants*

**JOHNSTON, J.**

1

## FACTUAL AND PROCEDURAL CONTEXT

Christopher J. Tigani ("Christopher")[1] brings this suit purportedly on behalf of the Irrevocable Trust for the benefit of Robert F. Tigani ("Robert") dated December 16, 1986 (the "Trust").[2] Christopher identifies himself as a vested beneficiary[3] of the Trust. Robert is the father of Christopher.[4] The Trust is a generation skipping Irrevocable Trust[5] formed under Delaware law.[6] Defendants Steven R. Director, Esq. ("Director") and Stephen B. Brauerman, Esq. ("Brauerman") are Delaware attorneys.[7] Director and Brauerman are shareholders and directors of Defendant Wilmington law firm Bayard, P.A. (collectively referred to as "Bayard Defendants").[8] Defendant W. Donald Sparks II, Esq. ("Sparks"), is a Delaware attorney.[9] Sparks is a director of Defendant Wilmington law firm Richards, Layton & Finger, P.A. (collectively referred to as "Richards Defendants").[10]

---

[1] Due to the nature of the claims involving members of the same family, members of the Tigani family will be referred to using their first names. No disrespect is intended.

[2] Richards Opening Br. at 2.

[3] Christopher's status as vested beneficiary of the Trust is in dispute. Christopher states his claims *pro se* on behalf of the Trust and as a vested beneficiary. Bayard Defendants and Richards Defendants dispute this status and his capability to state a claim *pro se* on behalf of the Trust.

[4] Bayard Opening Br. at 1.

[5] Richards Op. Br. at 3.

[6] Bayard Op. Br. at 5.

[7] *Id.* at 6.

[8] *Id.*

[9] *Id.*

[10] *Id.*

The Trust's assets originally consisted of 72 Shares of NKS Distributors[11] ("NKS") stock.[12] The terms of the Trust designate Robert as the sole beneficiary of the Trust during his lifetime.[13] Upon Robert's death, in the absence of an agreement to the contrary, the Trust "shall be distributed in such proportions and in such manner as [Robert] shall have appointed" among Robert F. Tigani, Jr., Christopher, and their issue.[14] "Should [Robert] fail to exercise a power of appointment, the trust is to be divided into residuary trusts for the benefits of Robert F. Tigani, Jr. and [Christopher]."[15]

In March 2013, a NKS Stock Issuance occurred. The Stock Issuance was backdated to July 2012.[16] This Stock Issuance was recorded in the NKS stock ledger on November 13, 2017.[17] As a result of the Stock Issuance, Robert received 75 shares of stock.[18] This increased the number of shares issued from 125 to 200.[19]

---

[11] *Id.* at 5. (NKS is an alcoholic beverage distributorship owned by Robert F. Tigani Sr. and the 1986 Trust).
[12] *Id.*
[13] *Id.*
[14] Richards Op. Br. at 3.
[15] *Id.* (with further provision for division should either of them predecease Robert) (citing Complaint Ex. A. Art. 5).
[16] *Id.* at 4.
[17] Amend. Compl. at ¶ 21.
[18] Richards Op. Br. at 4.
[19] *Id.*

Robert received the controlling interest of NKS.[20] This also changed the percentage of NKS held by the Trust from 57.6% to 36%.[21]

In April 2013, Robert designated Director as successor trustee of the Trust and as NKS' newest board member.[22] Director would become a successor trustee of the Trust "if all of the other named trustees fail to qualify, resign, die, or cease to act."[23]

In 2016, a Stock Authorization occurred.[24] NKS issued 256 shares of non-voting NKS stock to Robert for $2.56, the par value of the stock.[25] Christopher alleges that Sparks "drafted all the documents to accomplish the 2016 Stock Authorization."[26] Sparks drafted a new irrevocable trust for the benefit of Robert and any of his third wife's family.[27]

Christopher alleges that in 2015, Sparks engaged in specialized legal representation of a fiduciary, Robert, in Robert's capacity as trustee of the Trust.[28] Christopher also alleges that Director and Brauerman provided legal advice and

---

[20] *Id.*
[21] *Id.*
[22] Bayard Op. Br. Ex. 1 at ¶ 5.
[23] Bayard Op. Br. at 7 (quoting Compl. ¶¶ 126, 135).
[24] Richards Op. Br. at 6.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.* at 5.

4

services to Robert as trustee of the Trust at various times since 1996.[29] On October 3, 2019, Christopher filed the initial Complaint on behalf of the Trust, asserting claims for legal malpractice. On October 28, 2019, Christopher filed an Amended Complaint to add claims for breach of fiduciary duty, negligence, and breach of contract.[30] On December 4, 2019, the Richards Defendants and the Bayard Defendants filed separate Motions to Dismiss. On January 17, 2020, Christopher filed his Answering Brief. On February 24, 2020, both the Richards Defendants and the Bayard Defendants filed Reply Briefs in further support of their respective Motions to Dismiss.

## STANDARD OF REVIEW

### *Failure to State a Claim Upon Which Relief Can be Granted*

In a Rule 12(b)(6) Motion to Dismiss, the Court must determine whether the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[31] The Court must accept as true all well-pleaded allegations.[32] Every reasonable factual inference will be drawn in the non-moving

---

[29] Bayard Op. Br. at 6.
[30] *Id.* at 2.
[31] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978)
[32] *Id.*

5

party's favor.[33] If the claimant may recover under that standard of review, the Court must deny the Motion to Dismiss.[34]

## ANALYSIS

### *Lack of Subject Matter Jurisdiction*

Plaintiff informed the Court during oral argument that he does not intend to pursue Count IV, breach of fiduciary duty claims, in this Court. Therefore, the Court will focus its subject matter analysis on the issue of whether Plaintiff's remaining claims are derivative.

Bayard Defendants argue that dismissal is proper where a claim asserts a purely equitable Cause of Action because the Superior Court has jurisdiction over matters of law, as opposed to the Court of Chancery's equity jurisdiction. Bayard Defendants argue that that derivative actions are cognizable only in equity.

Christopher contends that this claim is not purely equitable.

Bayard Defendants rely on *Alabama By-Products Corporation v. Cede & Company*.[35] In *Alabama*, the Delaware Supreme Court found that "the derivative action … enables shareholders to sue on behalf of the corporation where those in

---

[33] *Wilmington Sav. Fund Soc'y v. Anderson*, 2009 WL 597268, at *2 (Del. Super.) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).
[34] *Spence*, 396 A.2d at 968.
[35] 657 A.2d 254, 264 (Del. 1995) ("The derivative suit is a uniquely equitable remedy").

6

control of the company refuse or fail to assert a claim belonging to it."[36] Thus, the Supreme Court determined that "the derivative suit is a uniquely equitable remedy."[37]

Bayard Defendants also look to *Schoon v. Smith*.[38] In *Schoon*, the Supreme Court explained that "the stockholder's derivative suit was created in equity ... to provide the stockholder a right to call to account his directors for their management of the corporation, analogous to the right of a trust beneficiary to call his trustee to account for the management of the trust corpus."[39] The *Schoon* plaintiff filed a derivative action on behalf a corporation against his fellow directors.

Bayard Defendants further rely on *Rizzo v. Joseph Rizzo & Sons Construction Company*.[40] In *Rizzo*, the Court of Chancery stated that "courts of this state have long recognized that a derivative claim is 'cognizable only in equity.'"[41] The Court of Chancery further explained that "a derivative action can also be brought to enforce a purely legal right of the corporation. In such a circumstance, a stockholder cannot bring that derivative claim at law, even though the corporation

---

[36] 657 A.2d at 264.
[37] *Id.* at 11.
[38] 953 A.2d 196, 196 (Del. 2008).
[39] *Id.* at 202.
[40] 2007 WL 1114079 (Del. Ch.).
[41] *Id.* at *2.

itself would have been able to bring it."[42] The *Rizzo* plaintiff asserted ejectment, a legal claim, that became a creature of equity when asserted derivatively.

Court of Chancery Rule 23.1 governs derivative actions by shareholders. This Court has no counterpart to Rule 23.1.

Christopher relies on *Dolese Brothers Company v. Brown*,[43] quoting the general rule that "if the trustee fails or refuses to enforce an action on behalf of the trust against a third person, and if he is beyond the jurisdiction of the court, the beneficiary may sue and the case may proceed without him."[44] In *Dolese*, the Supreme Court held that "the case [fell] within the recognized exception to the general rule" because the "primary purpose of [that] suit [was] to call [the plaintiff] to account not for breach of his duties as trustee … but for breach of his fiduciary duty as president and dominating director of Dolese Bros. Co."[45]

Christopher's reliance on *Dolese* is misplaced. In *Dolese,* the action on behalf of the trust was brought derivatively in the Court of Chancery. The Amended Complaint explicitly states that Christopher brings this case on behalf of the Trust.[46]

---

[42] *Id.*
[43] 157 A.2d 784 (Del. 1960).
[44] *Id.* at 788.
[45] *Id.*
[46] Amend. Compl. at ¶ 8.

Christopher also relies on *Prospect Street Energy, LLC v. Bhargava*,[47] which provides that "dismissal is only proper where a claim amounts to a 'purely equitable cause of action.'" Christopher argues that the claims—malpractice and negligence—are not equitable. Thus, Christopher asserts that the Complaint should not be dismissed because the *entire* complaint is not rooted in equity.

In *Prospect Street Energy,* this Court found that the breach of fiduciary duty claim and the gross negligence claim were equitable claims that must be decided by the Court of Chancery. This Court held:

> Plaintiffs have a choice to make. They may agree to have the case transferred to Chancery where the equity claims may be litigated, and the law claims considered under Chancery's clean up doctrine. Alternatively, Plaintiffs can abandon with prejudice the equitable claims altogether and proceed in this Court on their legal claims alone. Or finally, Plaintiffs could proceed on the equitable claims in Chancery Court with the law claims being stayed pending the outcome of that litigation.[48]

Where equitable claims are present, the Court of Chancery may exercise "clean-up" jurisdiction over non-equitable claims arising from the same controversy.[49]

---

[47] 2016 WL 446202 (Del. Super.).
[48] *Id.* at *10.
[49] *Gelof v. Prickett, Jones & Elliott, P.A.*, 2010 WL 759663, at *1 (Del. Ch.).

It is undisputed that this is a derivative action. This Court lacks subject matter jurisdiction over derivative claims.

## Pro Se *Standing*

Both the Bayard Defendants and Richards Defendants argue that this action must be dismissed because Christopher cannot proceed *pro se.*

Richards Defendants assert that artificial entities must be represented by counsel.[50] Richards Defendant also argue that the prohibition on an entity appearing *pro se* applies equally to an individual bringing a claim on behalf of the entity.[51]

Bayard Defendants argue that Delaware law prohibits Christopher from bringing this action *pro se* because: (1) derivative claims cannot proceed *pro se*; and (2) artificial entities such as private Delaware trusts cannot litigate without counsel.[52] Bayard Defendants contend that a "derivative action may be identified as one 'where an entity has failed to pursue a direct claim' and thus 'an equitably interested party without a direct claim brings a derivative claim on the entity.'"[53]

Christopher counters that he has brought multiple actions on behalf of the Trust from 2009 to mid-2012. Christopher asserts that he brought and defended

---

[50] Richards Op. Br. at 13.
[51] *Id.* at 15.
[52] Bayard Op. Br. at 19.
[53] *Id.* at 12 (citing Donald J. Wolfe & Michael Pittenger Corporate and Commercial Practice in the Delaware Court of Chancery §2.03[b][1] at 2-50 (2018)).

10

every action *pro se*. Thus, he should be allowed to bring this action for professional malpractice, negligence, breach of contract, and fee forfeiture against Defendants. Christopher also argues that Robert's failure to act vested Christopher's standing to act for him.

It is well-established in Delaware that a plaintiff seeking to assert derivative claims must be represented by counsel.[54] A derivative action may not be brought *pro se*.[55]

Bayard Defendants rely on *Kelly v. Fuqi International, Incorporated*.[56] In *Kelly*, the Court of Chancery prohibited the plaintiff from bringing the action *pro se* on behalf of the corporation's stockholders. The *Kelly* plaintiff brought the action to recover funds allegedly fraudulently transferred out of the corporation.[57]

In *Transpolymer Industries, Inc. v. Chapel Main Corp*,[58] the Supreme Court held that a corporation, "though a legally recognized entity, is regarded as an artificial or fictional entity." The *Transpolymer* plaintiff attempted to appear on behalf of the corporation as its' "president and majority shareholder."[59] The

---

[54] *Beck v. Greim*, 2016 WL 3962053, at *2 (Del. Ch.).
[55] *Kelly v. Fuqi Int'l, Inc.*, 2013 WL 135666, at *7 (Del. Ch.).
[56] *Id.*
[57] *Id.*
[58] 1990 WL 168276 (Del.).
[59] *Id.* at *1.

11

Supreme Court found that "[a]n artificial entity can only act through its agents and, before a court only through an agent duly licensed to practice law."[60]

The Delaware Supreme Court's Rule 57 definition of "artificial entity" includes "any trust as defined in 12 Del. C. § 3501, [or] any estate for which an executor or administrator can act pursuant to 12 Del. C. § 1501 Delaware Code."[61]

In *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804,*[62] the United States Court of Appeals for the Third Circuit held that "a trust is not an entity distinct from its trustees, nor is it capable of legal action on its own behalf."[63] The *Palmetto* plaintiff was the sole trustee acting on behalf of the trust.

Richards Defendants rely on *Bell v. South Bay European Corporation,*[64] asserting that even a trustee cannot appear *pro se*. "A trust is deemed an artificial entity for the purposes of the rule barring a nonlawyer trustee from representing the interests of the trust."[65] The *Bell* plaintiff was the assignee of a purported bank trust. The District Court held:

> [T]he bar on a non-lawyer's representation of the artificial entity may not be circumvented by assignment to a natural person [and] ought to apply with equal force to an assignment by a trust. Trusts are artificial

---

[60] *Id.*
[61] Sup. Ct. R. 57.
[62] 822 F.3d 136 (3d Cir. 2016).
[63] *Id.* at 140.
[64] 486 F. Supp. 2d 257 (S.D.N.Y. 2007).
[65] *Id.* at 258.

creatures of state law and often represent a bundle of rights and obligations of the grantor, the trustee and the beneficiaries.[66]

In *Parfi Holding AB v. Mirror Image Internet, Incorporated*,[67] the Court of Chancery required the plaintiffs, who were corporate entities purporting to serve as derivative plaintiffs, to obtain counsel. The Court of Chancery ruled that "in Delaware artificial entities must be represented by counsel."[68]

On the issue of *pro se* standing, plaintiff has failed to provide any opposing authority. Plaintiff has cited certain cases in support of his position. The Court finds these to be without precedential value. Those decisions did not address the pertinent standing issue. For example, in *Radius Servs., LLC v. Jack Corrozi Const., Inc.,* this Court noted that the "plaintiff has cited a number of cases in which it contends that the Superior Court has exercised jurisdiction over a claim for negligent misrepresentation …. However, the jurisdictional issue which the defendants raise in this case was not raised in any of these cases."[69]

It is undisputed that the Trust is an artificial entity. Christopher explicitly purports to bring this claim on behalf of the Trust. The Court finds that the Plaintiff has no standing to proceed *pro se*.

---

[66] *Id.* at 259.
[67] 2006 WL 903578 (Del. Ch.).
[68] *Id.* at *2 (citing *Transpolymer Indus., Inc. v. Chapel Main Corp.*, 1990 WL 168276, at *1 (Del.).
[69] *Radius Servs., LLC v. Jack Corrozi Const., Inc.*, 2009 WL 3273509, at *3 (Del. Super.).

13

## CONCLUSION

It is undisputed that the Trust is an artificial entity. It is undisputed that the Plaintiff brings this action on behalf of the Trust. Thus, the Plaintiff brings this action derivatively. This Court lacks subject matter jurisdiction over derivative claims. The Court also finds that Plaintiff is barred from bringing this action *pro se* on behalf of the Trust. The Court need not address the disputed status of Christopher's relationship to the Trust. The Court declines to address the substance of the remaining counts in the Complaint.

Any subsequent complaint must be filed by an attorney. Amendment of the present Complaint otherwise would be futile.

**THEREFORE**, the Bayard Defendants' and Richards Defendants' Motions to Dismiss the Amended Complaint are hereby **GRANTED**.

**IT IS SO ORDERED.**

_____
The Honorable Mary M. Johnston